## UNITED STATES v. MURDOCK.

No. 88. Argued November 6, 1933.—Decided December 11, 1933.

---

*Solicitor General Biggs,* with whom *Messrs. Sewall Key* and *John H. McEvers* were on the brief, for the United States.

*Mr. Harold J. Bandy,* with whom *Mr. Edmund Burke* was on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This case is here for the second time.

The respondent was indicted for refusal to give testimony and supply information as to deductions claimed in his 1927 and 1928 income tax returns for moneys paid to others. By a special plea he averred that he ought not to be prosecuted under the indictment, because if he had answered the questions put to him he would have given information tending to incriminate him, in contravention of the Fifth Amendment. The United States demurred on the grounds that the plea failed to show that the information demanded would have incriminated or subjected the defendant to prosecution under federal law, and that the defendant waived his privilege under the Fifth Amendment. The demurrer was overruled. Upon appeal this court reversed the judgment for the reason that, at the hearing before the federal revenue agent, the defendant had not invoked the protection of the Fifth Amendment against possible prosecution under federal legislation, but solely under state laws. The cause was remanded to the District Court for further proceedings. *United States* v. *Murdock*, 284 U.S. 141.

The petitioner pleaded not guilty, was put upon trial and convicted. He appealed to the Circuit Court of Appeals, which reversed the judgment,[1] and the case was brought here by writ of certiorari.[2] The question presented is whether the trial court correctly instructed the jury as to what constitutes a violation of the sections of the Revenue Acts of 1926 and 1928 upon which the indictment was based.

Section 256 of the Revenue Act of 1926, and § 148 of the Revenue Act of 1928, in identical words, require all

[1] 62 F. (2d) 926.

[2] See Table of Cases Reported in this volume.

persons making payment to another to make a true and accurate return to the Commissioner of Internal Revenue, under such regulations as he shall prescribe, setting forth the amount paid and the name and address of the recipient.[3] Section 1104 of the Act of 1926 and § 618 of the Act of 1928 authorize the Commissioner, for the purpose of ascertaining the correctness of any return, or of making a return where none has been made, through officers or employees of the Bureau of Internal Revenue, to examine books, papers, records and memoranda bearing upon the matters required to be included in the return, and to compel the attendance of the taxpayer or any one having knowledge of the premises, and to take testimony with reference to the matter directed by law to be included in the return, with power to administer oaths to the persons to be interrogated.[4]

Section 1114 (a) of the Revenue Act of 1926 declares: [5]

"Any person required under this Act to pay any tax, or required by law or regulations made under authority thereof to make a return, keep any records, or supply any information, for the purposes of the computation, assessment, or collection of any tax imposed by this Act, who *willfully* fails to pay such tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both, together with the costs of prosecution."

Section 146 (a) of the Revenue Act of 1928 is identical with the quoted section of the 1926 Act.[6] The indictment

---

[3] U.S.C. Tit. 26, §§ 1023, 2148.

[4] U.S.C. Tit. 26, § 1247, U.S.C.A. Tit. 26, § 1247, note.

[5] 44 Stat. 116; U.S.C. Tit. 26, § 1265.

[6] Except that it substitutes the word "title" for the word "act," 45 Stat. 835; U.S.C. Tit. 26, § 1265.

in two counts charged violation of the provisions of the two sections last mentioned.

Upon the trial the Government proved the respondent had been duly summoned to appear before a revenue agent for examination; questions had been put to him; he refused to answer, stating he feared self-incrimination, and upon further inquiry disclosed that his fear was based upon possible prosecutions under state statutes. The Government also offered evidence that on a prior occasion at a meeting with certain revenue agents the respondent had refused to disclose the name of the payee of the sums deducted by him in his returns for 1927 and 1928. To this, counsel for the respondent objected, on the ground that it was irrelevant to the issue, which was the respondent's refusal to answer when summoned, sworn and interrogated. The prosecuting attorney replied that the willfulness of the respondent's refusal to answer was in issue, and that the proposed evidence bore upon that matter. The court overruled the objection and admitted the testimony. The respondent offered no evidence. In the course of his charge the trial judge said:

" So far as the facts are concerned in this case, gentlemen of the jury, I want to instruct you that whatever the court may say as to the facts, is only the court's view. You are at liberty to entirely disregard it. The court feels from the evidence in this case that the Government has sustained the burden cast upon it by the law and has proved that this defendant is guilty in manner and form as charged beyond a reasonable doubt."

The respondent's request for an instruction in the following words was refused:

" If you believe that the reasons stated by the defendant in his refusal to answer questions were given in good faith and based upon his actual belief, you should consider that in determining whether or not his refusal to answer the questions was wilful."

In the circumstances we think the trial judge erred in stating the opinion that the respondent was guilty beyond a reasonable doubt. A federal judge may analyze the evidence, comment upon it, and express his views with regard to the testimony of witnesses. He may advise the jury in respect of the facts, but the decision of issues of fact must be fairly left to the jury, *Patton* v. *United States,* 281 U.S. 276, 288; *Quercia* v. *United States,* 289 U.S. 466. Although the power of the judge to express an opinion as to the guilt of the defendant exists, it should be exercised cautiously and only in exceptional cases. Such an expression of opinion was held not to warrant a reversal where upon the undisputed and admitted facts the defendant's voluntary conduct amounted to the commission of the crime defined by the statute. *Horning* v. *District of Columbia,* 254 U.S. 135. The present, however, is not such a case, unless the word " willfully," used in the sections upon which the indictment was founded, means no more than voluntarily.

The word often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But when used in a criminal statute it generally means an act done with a bad purpose (*Felton* v. *United States,* 96 U.S. 699; *Potter* v. *United States,* 155 U.S. 438; *Spurr v. United States,* 174 U.S. 728); without justifiable excuse (*Felton* v. *United States, supra; Williams* v. *People,* 26 Colo. 272; 57 Pac. 701; *People* v. *Jewell,* 138 Mich 620; 101 N.W. 835; *St. Louis, I. M. & S. Ry. Co.* v. *Batesville & W. Tel. Co.,* 80 Ark. 499; 97 S.W. 660; *Clay* v. *State,* 52 Tex. Cr. 555; 107 S.W. 1129); stubbornly, obstinately, perversely, *Wales* v. *Miner,* 89 Ind. 118, 127; *Lynch* v. *Commonwealth,* 131 Va. 762; 109 S.E. 427; *Claus* v. *Chicago Gt. W. Ry. Co.,* 136 Iowa 7; 111 N.W. 15; *State* v. *Harwell,* 129 N.C. 550; 40 S.E. 48. The word is also employed to characterize a thing done without ground for believing it is lawful (*Roby* v. *Newton,* 121 Ga. 679; 49

S.E. 694), or conduct marked by careless disregard whether or not one has the right so to act, *United States* v. *Philadelphia & R. Ry. Co.*, 223 Fed. 207, 210; *State* v. *Savre*, 129 Iowa 122; 105 N.W. 387; *State* v. *Morgan*, 136 N.C. 628; 48 S.E. 670.

This court has held that where directions as to the method of conducting a business are embodied in a revenue act to prevent loss of taxes, and the act declares a willful failure to observe the directions a penal offense, an evil motive is a constituent element of the crime. In *Felton* v. *United States, supra,* the court considered a statute which required distillers to maintain certain apparatus to prevent the abstraction of spirits during the process of distillation and which declared that if any distiller should " knowingly and wilfully " omit, neglect, or refuse to do anything required by law in conducting his business he should be liable to a penalty. It appeared that in defendant's plant defective appliances caused an overflow and wastage of low wines, and to save these it became necessary, in disregard of the method prescribed by the Act, to catch the spirits and pour them into vats. This was done despite instructions to the contrary by the government officers who were consulted as to what procedure should be followed. It was admitted that the action was innocent in purpose, saved loss of the product to the owner and taxes to the United States. In an action for the statutory penalty the conduct of the distiller was held not to be willful within the meaning of the law.

Aid in arriving at the meaning of the word " willfully " may be afforded by the context in which it is used (*United States* v. *Sioux City Stock Yards Co.*, 162 Fed. 556, 562), and, we think, in the present instance the other omissions which the statute denounces in the same sentence only if willful, aid in ascertaining the meaning as respects the offense here charged. The Revenue Acts command the citizen, where required by law or regulations, to pay the

tax, to make a return, to keep records, and to supply information for computation, assessment or collection of the tax. He whose conduct is defined as criminal is one who " *willfully* " fails to pay the tax, to make a return, to keep the required records, or to supply the needed information. Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct. And the requirement that the omission in these instances, must be willful, to be criminal, is persuasive that the same element is essential to the offense of failing to supply information.

It follows that the respondent was entitled to the charge he requested with respect to his good faith and actual belief. Not until this court pronounced judgment in *United States* v. *Murdock,* 284 U.S. 141, had it been definitely settled that one under examination in a federal tribunal could not refuse to answer on account of probable incrimination under state law. The question was involved, but not decided, in *Ballman* v. *Fagin,* 200 U.S. 186, 195, and specifically reserved in *Vajtauer* v. *Comm'r of Immigration,* 273 U.S. 103, 113. The trial court could not, therefore, properly tell the jury the defendant's assertion of the privilege was so unreasonable and ill founded as to exhibit bad faith and establish willful wrongdoing. This was the effect of the instructions given. We think the Circuit Court of Appeals correctly upheld the respondent's right to have the question of absence of evil motive submitted to the jury, and we are of opinion that the requested instruction was apt for the purpose.

The Government relies on *Sinclair* v. *United States,* 279 U.S. 263. That case, however, construed an altogether

different statutory provision. Sinclair was indicted for refusal to answer a question pertinent to a matter under investigation by a committee of the Senate. The Act upon which the indictment was based declared " Every person who having been summoned as a witness by the authority of either House of Congress, to give testimony or to produce papers upon any matter under inquiry before either House, or any committee of either House of Congress, *willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry,* shall be deemed guilty of a misdemeanor, . . ." [7] Two distinct offenses are described in the disjunctive, and in only one of them is willfulness an element. Sinclair having been summoned attended the hearing. He was therefore guilty of no willful default in obeying a summons. He refused to answer certain questions not because his answers might incriminate him, for he asserted they would not, but on the ground the questions were not pertinent or relevant to the matters then under inquiry. The applicable statute did not make a bad purpose or evil intent an element of the misdemeanor of refusing to answer, but conditioned guilt or innocence solely upon the relevancy of the question propounded. Sinclair was either right or wrong in his refusal to answer, and if wrong he took the risk of becoming liable to the prescribed penalty. Here we are concerned with a statute which denounces a willful failure to do various things thought to be requisite to a proper administration of the income tax law, and the Government, in the trial below, we think correctly, assumed that it carried the burden of showing more than a mere voluntary failure to supply information, with intent, in good faith, to exercise a privilege granted the witness by the Constitution. The respondent's refusal to answer was intentional and without legal justification, but

---

[7] U.S.C. Tit. 2, § 192.

the jury might nevertheless find that it was not prompted by bad faith or evil intent, which the statute makes an element of the offense.

The judgment is

*Affirmed.*

MR. JUSTICE STONE and MR. JUSTICE CARDOZO are of opinion that the judgment should be reversed.