THE PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellant, *v.* HARRY PIETERZS, Defendant and Appellee.

No. 8521. Argued November 5, 1942.—Decided January 15, 1943.

*George A. Malcolm, Attorney General,* and *M. Rodríguez Ramos, Assistant Attorney General,* for appellant. *J. J. Ortiz Alibrán* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

Harry Pietersz duly filed his income tax return for 1924. In 1936, pursuant to §57(*b*) of the Income Tax Act, the Treasurer assessed a deficiency of $576.80 on Pietersz for 1924. In addition to claiming interest since 1925, the Treasurer, pursuant to §58(*b*) of the said act, demanded payment of an additional 50 per cent of the deficiency, on the ground that the deficiency was "due to fraud with intent to evade tax . . .".

Section 60(a) (1) of the said act provided for a five-year statute of limitations for the assessment and institution of suit for income taxes. The suit herein would therefore have ordinarily long since been barred. However, §61(a) read as follows:

"In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

The assessment herein therefore stands or falls on a determination of whether Pietersz' 1924 return was "a false or fraudulent return with intent to evade tax . . .".

The then Board of Review and Equalization held the deficiency was barred by the statute of limitations, whereupon the People of Puerto Rico filed the present suit in 1939 in the district court to collect the amounts in question. The lower court, after a trial on the merits, entered judgment for the defendant, and the People have appealed.

The facts involved herein are comparatively simple. The return reflected a net income of $4,581.37 and exemptions, credits, and deductions amounting to $5,167. Consequently, Pietersz paid no tax. However, he did report in the said income of $4,581.37 an item of $1,500 which he declared he earned in "hauling tubes for the aqueduct" of San Juan. But the government contends that during 1924 he actually earned $12,500 instead of $1,500 in the said business, and that he had fraudulently failed to include that item in his return with intent to evade the tax thereon.

With the exception of the testimony of Miguel Ferrer in one minor respect, the government's case rests wholly on Pietersz' own affidavit, executed at the request of the Treasurer on September 27, 1935. In this affidavit he readily admits receipt of $17,000 from Vidal Sánchez, the contractor who was building the aqueduct in question. Thereafter, on February 6, 1936, the Treasurer, claiming that Pietersz had

fraudulently failed to include $12,500 of this amount in his 1924 return, assessed the deficiency involved herein. But at no point in this case has the Treasurer ever adduced any testimony or offered any explanation as to how he arrived at the sum of $12,500 as the income Pietersz netted from this deal and which he therefore should have included in his 1924 return.

Pietersz' defense has consistently been that his net profit from the deal in question was $1,500, the amount he reported in his return. In his affidavit, and later in his testimony, he asserts that the remainder of his gross receipts from Vidal Sánchez went to López Salgado and Barreto for hire of "a caravan of trucks," to peons for labor, workmen's compensation, and materials. The only dispute as to his disbursements arose out of Pietersz' testimony that when he was paid the balance due him at the close of the job, Miguel Ferrer, Vidal Sánchez' partner, withheld $2,000 which the municipality was claiming for tubes broken in transit.

There was no contradiction of any of this testimony, except that Ferrer denied he retained the said $2,000. But this testimony was taken fifteen years after the event. Pietersz was more likely to remember accurately a detail like this than Ferrer, who was engaged in many other aspects of the matter. Moreover, at the time he testified, Ferrer was himself under investigation as to his own return involving money he received from Vidal. Indeed, it would not be wholly unwarranted to explain this comparatively minor discrepancy by finding that the $2,000 in question may have been included in the other items of expense detailed by Pietersz. "Much would be excused to one called upon to answer an eleven year old charge of fraud, which would not be allowed to one called upon to explain a recent transaction." (*Delone* v. *Commissioner of Internal Revenue*, 100 F. (2d) 507, 508 (C.C.A. 3rd, 1938).

We fully agree with the district court that the government did not make out a case of tax liability on which the deficiency assessed by the Treasurer could properly be based.

We think it appropriate to add that there was likewise no showing that Pietersz made his return fraudulently with intent to evade the tax. If a return is actually filed, failure to include a portion of net income therein does not make the return fraudulent *ipso facto*. To agree with that contention would require us to hold that a mistaken return is, without more, a return made with intent to evade the tax. The Federal cases, interpreting an identical section, negative that contention (*Duffin* v. *Lucas*, 55 F. (2d) 786 (C.C.A. 6th, 1932); *Griffiths* v. *Commissioner of Internal Revenue*, 50 F. (2d) 782 (C.C.A. 7th, 1931); *Moore* v. *Commissioner of Internal Revenue*, 37 B.T.A. 378 (1938); *Delone* v. *Commissioner of Internal Revenue, supra;* Paul & Mertens, Law of Federal Income Taxation, vol. 5, §§48.03, 48.09). Cf. *Helvering* v. *Mitchell*, 303 U. S. 391. Indeed, our statute recognized in §58(a) that an incorrect return, even when made negligently, did not necessarily carry with it the imputation of fraud.

The government relies almost entirely on *Casal* v. *Sancho, Treas.*, 53 P.R.R. 609. But in that case this court, in passing on the issue of alleged fraudulent intent to evade the tax, was faced with a situation in which no return whatsoever was filed. Failure to file a return may in itself be a significant fact on the issue of intent. Indeed, the Legislature, in the Income Tax Act of 1924, amended the 1919 Act to provide that such failure, without any further proof on intent, entitled the Treasurer to invoke the provisions of the aforesaid §61(a). In addition, in the *Casal* case the court found fraud from the "attendant circumstances," including an explanation for the failure to file a return which the court rejected as lacking in credence.

There is no touchstone which gives the final answer on issues of intent and fraud. "Nothing is more frequent in human relations than the effort to learn what goes on in others' minds." (*United Business Corporation* v. *Commissioner of Int. Rev.*, 62 F. (2d) 754, 756, C.C.A. 2d, 1933). It is almost always established by circumstantial evidence. And all the circumstances surrounding one transaction are rarely applicable to another case. See Motive and Intent in Federal Tax Law, Paul, Selected Studies in Federal Taxation, Second Series, p. 255, at p. 288; *United States* v. *Murdock*, 290 U. S. 389, 394. The circumstances in the instant case point only in one direction.

The judgment of the district court will be affirmed.