**Howard W. GEORGE, Special Agent, United States Treasury Department, Internal Revenue Service, Plaintiff,**

v.

**Emery LINDBERG, Defendant.**

**Howard W. GEORGE, Special Agent, United States Treasury Department, Internal Revenue Service, Plaintiff,**

v.

**Gustav A. BODIN, Defendant.**

Civ. Nos. 5292, 5293.

United States District Court
D. Minnesota, Fourth Division.

Jan. 16, 1956.

Alex Dim, St. Paul, Minn., for the Government.

Max Shapiro, Minneapolis, Minn., for defendants.

DEVITT, District Judge.

The United States has brought an order to show cause as to why Emery Lindberg, a bartender, and Gustav A. Bodin, a clean-up man, should not be required to answer questions before an agent of the Internal Revenue Service in connection with an investigation of the possible occupational tax stamp liability of their employer, one Gordon E. Triemert, owner and operator of the Anchor Inn, a Minneapolis bar. On May 9, 1955 these two men appeared before the Internal Revenue Agent in response to a summons (issued pursuant to § 7602 of the 1954 Internal Revenue Code, 26 U.S.C.A. § 7602), answered some questions, and refused to answer others on the grounds that the answers might tend to incriminate them.

Lindberg refused to answer 12 questions of the approximately 60 asked of him. Bodin refused to answer 8 of 47 questions. The transcript of these questions asked of both Lindberg and Bodin is set out in the margin below.[1]

---

1. Lindberg:

"31. Q. Nixon (Agent): Were you in the establishment when the machine was taken out on March 14, 1955, by the Minneapolis Police Department?

"Shapiro (Attorney for Lindberg): Just a minute, I want to interpose an objection for the purpose of advising the witness that as to that question he need not answer on the ground that it might tend to incriminate him; he can assert his rights under the Fifth Amendment.

"32. Q. Nixon: In what way would the fact that you were present at the time the machine was taken out of the establishment by the Minneapolis police in any way incriminate you?

"Shapiro: Here, too, I want to interpose an objection and advise the witness I don't believe he needs to answer that question. That is something for him to determine himself and not subject to objective inquiry."

"34. Q. Who was the person that made the collections for the Advance Music Company?

"Shapiro: Again I will advise the witness that he need not answer that question on the ground it might tend to incriminate him.

"35. Q. Were you present when the collections were made by the Advance Music Company from these machines?

The Government seeks to enforce obedience to the summons in accordance with Section 7604 of the 1954 Internal Revenue Code, 26 U.S.C.A. § 7604. The issue is as to whether or not giving answers to these questions would incriminate the witnesses within the meaning of the protection afforded by the Fifth Amendment to the Constitution against self-incrimination.[2]

"Shapiro: Again I want to advise the witness that he need not answer that question on the ground it might tend to incriminate him.

"36. Q. How were the profits from these pinball machines split between the Advance Music Company and Mr. Triemert?

"Shapiro: Again I want to advise the witness that he need not answer that question on the ground that it might tend to incriminate him."

"38. Q. What deductions were made on the gross receipts of the pinball machines before the split was made between the Advance Music and Mr. Triemert?

"Shapiro: Again I advise the witness he need not answer on the ground it might tend to incriminate him."

"42. Q. Did you ever make any pay-offs to any individuals for wins that they had on the pinball machines?

"Shapiro: Again I advise the witness he need not answer on the ground that it might tend to incriminate him.

"George: Are you going to continue objecting—

"Shapiro: I am advising the witness not to answer all of these questions on the ground it might tend to incriminate him."

"44. Q. Did Mr. Triemert give you authority to make payoffs for wins on the pinball machines? A. Again I say the same thing."

"46. Q. Did any of the pinball machines have jackpots? A. Again I refuse to answer that it might incriminate me under the Fifth Amendment."

"48. Q. Did anyone ever win a jackpot on a pinball machine in this establishment? A. Again I refuse to answer that question on the ground it might tend to incriminate me under the Fifth Amendment."

"51. Q. Nixon: Did you ever see Mr. Triemert make any payoffs? A. Again I refuse to answer that as it might tend to incriminate me under the Fifth Amendment.

"52. Q. Nixon: Did you ever see any other employees making any payoffs? A. To that I answer the same thing. I refuse to answer, it might tend to incriminate me under the Fifth Amendment."

Bodin:

"24. Q. What happened to the one-ball machine?

"Shapiro: On that question I will advise the witness he need not answer on the ground it might tend to incriminate him."

"29. Q. Why were you arrested by the Minneapolis police?

"Shapiro: As to that question I think the witness can refuse to answer on the ground it might tend to incriminate him. He made no statement as to why he was arrested, that is up to the police, they made the statement.

"30. Q. Did you give a statement, which you signed, to the Minneapolis police on March 14, 1955?

"Shapiro: I think the witness can refuse to answer that on the ground it might tend to incriminate him. There is nothing to prevent double prosecution, the fact that he was taken there would not grant him the privilege or immunty from double jeopardy for an offense that might be created by the United States Government against him."

"32. Q. Have you ever made a payoff to any person at the Anchor Inn for wins this person might have had on a pinball machine?

"Shapiro: As to that question and all other questions relating to a similar subject I advise the witness he need not answer on the ground it would tend to incriminate him."

"36. Q. I asked if you were ever present when the collections were made?

"Shapiro: Again I advise the witness if he feels it might tend to incriminate him he need not answer.

"37. Q. On March 14, 1955, you were arrested by the Minneapolis Police Department for making a payoff on a pinball machine at the Anchor Inn, is that correct? A. On advice of counsel I refuse to answer that question on the ground it might tend to incriminate me.

"38. Q. Who gave you the authority to make this payoff on the pinball machine at the Anchor Inn? A. On advice of counsel I refuse to answer on the ground it would tend, that it might incriminate me.

"39. Q. Have you ever made any other payoffs to customers for wins on any of the pinball machines? A. On advice of Counsel I refuse to answer on the grounds it might incriminate me."

2. The case develops from federal, state and municipal investigations of alleged violations of the law in connection with

■ It is now well established that the Constitutional protection extends only to prosecution for a federal crime, and the fear of state or municipal prosecution is not justification for refusing to answer a question put to a witness in a federal proceeding. United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210; Id., 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381.

It follows that these witnesses could not refuse to answer any questions in the fear that they might be prosecuted for violation of state or municipal anti-gambling statutes or ordinances.

■ It is also well established that the privilege against self-incrimination is a personal one and may not successfully be asserted to protect another. United States v. White, 1944, 322 U.S. 694, 695, 64 S.Ct. 1248, 88 L.Ed. 1542.

Directly pertinent law on the matter is expressed in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118; in Kiewel v. United States, 8 Cir., 204 F.2d 1, and in Saffo v. United States, 8 Cir., 213 F.2d 131.

The Hoffman case [341 U.S. 479, 71 S.Ct. 818] lays down the principle that the protection must be confined to instances where the witness has reasonable cause to apprehend *danger from a direct answer*, and it is for the Court in each instance to determine whether or not the witness' silence is justified and to require *him to answer if* " 'it clearly appears to the court that he is mistaken.' "

The court there said that:

"To sustain the privilege, it need only be evident from the applications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' "

In the Hoffman case the court concluded that in order to justify finding a witness guilty of contempt for refusing to answer a question it must be "perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answers cannot possibly have such tendency to incriminate."

The Kiewel case makes it clear, especially in Judge Sanborn's concurring opinion, that in determining whether or not the witness really apprehends danger in answering a question, the judge cannot permit himself to be *skeptical*.

It is pointed out in Kiewel [204 F.2d 8], quoting from Judge Hastie in United States v. Coffey, 3 Cir., 198 F.2d 438, that:

" * * * 'It is enough (1) that the trial court be shown by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime against the United States, and (2) that this suggested course and scheme of linkage not seem *incredible* in the circumstances of the particular case. * * *' " (Emphasis supplied.)

The Saffo case appreciably softens the apparently strict interpretation of the principle of Hoffman set out in Kiewel.

In Saffo it is said that [213 F.2d 133]:

"Of course, a man cannot be forced to give evidence against himself. But it is also an axiom of the law that he may not use the constitutional privilege of not giving evidence against himself to protect others."

the operation of pinball machines in the City of Minneapolis. In an allied case, unreported, the Court ordered certain pinball machine players, who claimed the protection of the Fifth Amendment, to answer questions put to them by Special Agents of the Internal Revenue Service. George v. O'Rourke and George v. Bollefer. File No.: Civil Nos. 5343 and 5344, decided January 11, 1956.

In pursuance of this principle and drawing a line of demarcation, the court then upheld the contempt conviction of the defendant as to his refusal to answer questions relating to whether or not he had seen others carry firearms in apparent violation of the anti-racketeering statute, Title 18 U.S.C.A. § 1951, but reversed it as to the conviction for failure to answer questions pertaining to the defendant's *own* participation in the alleged violation of the law.

Governed by these judicially expressed standards, it appears to the Court that Triemert, the tavern operator, could be charged with a violation of the Internal Revenue Code, 1954, § 7201 or 7203, 26 U.S.C.A. §§ 7201, 7203. Section 7201 makes it a crime for a person to wilfully attempt in any manner to evade or defeat any tax imposed by the Revenue Code. Section 7203 makes it a crime for any person to wilfully refuse to pay an estimated tax or a tax, or to make a return or to keep records or supply information.

The Criminal Code, Sec. 2, 18 U.S.C.A. § 2, makes it a crime for a person to aid or abet another in the commission of a crime.

Sec. 371, 18 U.S.C.A. § 371, of the Criminal Code makes it a crime for a person to conspire with another to violate a law of the United States.

Abandoning any skepticism which might be in the Court's mind, as I am enjoined to do by the Kiewel case, I am of the view that it is quite conceivable that a federal prosecutor could charge Lindberg and Bodin with aiding or abetting, the violation of, or with conspiring in the violation of, Sec. 7201 or 7203 of the Internal Revenue Code, and especially of Sec. 7201. The Government might well accumulate sufficient evidence against Triemert to prove that his operation of a coin-operated machine on a lottery basis was of itself adequate to prove his wilful attempt to evade or defeat the payment of the $250 gaming stamp tax imposed by §§ 4461, 4462 of the 1954 Internal Revenue Code, 26 U.S. C.A. §§ 4461, 4462. If it is true, as is implicit from a reading of the whole transcript of the examination of Lindberg and Bodin, that they probably did make payoffs on behalf of their employer, then each could well be charged with aiding or abetting the commission of, or with conspiracy to commit, the crime of which Triemert could well be charged.

The law of conspiracy is far-flung and tentacle-like in its operation and effect, and the conspiracy doctrine is one often employed by federal prosecutors, especially in this district. Although its implications have often been criticized, the employment of the doctrine in prosecutions has been almost habitually sustained by the Appellate Courts.

Similarly, the aider and abettor statute, Sec. 2, is often used and convictions under it have not been difficult of obtainment.

I therefore conclude that Lindberg and Bodin were justified in refusing to respond to questions, the answers to which might constitute injurious disclosures as to them personally, but were not justified in refusing to answer questions not falling in that category. In the first group, to which the Constitutional protection extends, are questions 42 and 44 put to Lindberg, asking whether or not he had made any pinball machine payoffs, and whether or not his employer had given him authority to make them; and questions 32, 38, and 39 put to Bodin asking him substantially the same thing.

As to all other questions, the Court concludes that the witnesses were mistaken in their belief that answers to them would incriminate them or that, under the principle of Rogers v. United States, 1951, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, they have waived the privilege against self-incrimination.

The Government's prayer for an order directing Lindberg and Bodin to answer the Internal Revenue Agent's questions is granted except as noted above.