**UNITED STATES of America,
Plaintiff,**

v.

**Earnest LaVerne CARLETON,
Defendant.**

**Crim. No. 17429.**

United States District Court
W. D. Oklahoma.
Feb. 17, 1956.

for the calendar year 1950, by filing with the Collector of Internal Revenue for the Internal Revenue Collection District of Oklahoma, at Oklahoma City, Oklahoma, a false and fraudulent joint income tax return on behalf of himself and his wife, wherein it was stated that their net income for said calendar year was the sum of $18,147.01 and the amount of tax due and owing thereon was the sum of $3,828.20, whereas, as he then and there well knew, their joint net income for said calendar year was the sum of $22,484.99, upon which said net income there was owing an income tax of $5,-217.16, in violation of Section 145(b), Title 26 United States Code.

The defendant has entered a plea of not guilty and the case has been submitted to the court for consideration without a jury. The facts have been stipulated. The questions for the court to determine are questions of fact and law. The real question to be determined is whether or not there was an evasion or an attempted evasion on the part of the defendant to pay the tax due to the government.

A proper consideration of the issue in this case involves a history of the various transactions of the defendant covering the period from 1946 through 1950. The defendant is a resident of Oklahoma City engaged in the general printing business. He is a veteran of World War II and under the record has never been convicted in any court. He was a member of the Oklahoma State Legislature for two terms, 1935 to 1939, inclusive, and in April, 1947, was elected a member of the Oklahoma City Council, serving in that capacity for two terms, until April, 1955. With the exception of the two periods above referred to, the defendant has not been a public official in any capacity and has devoted his full time to his trade as a printer.

The defendant's income tax returns for 1946 to 1950, inclusive, involved certain income which defendant is alleged to have received from the Metropolitan Paving Company (hereinafter referred to as Metropolitan), for services ren-

Paul W. Cress, U. S. Atty., and Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff.

Luther Bohanon and Fred M. Mock, Oklahoma City, Okl., for defendant.

VAUGHT, Chief Judge.

The defendant is charged by information with having willfully and knowingly attempted to evade and defeat a large part of the income tax due and owing by him and his wife to the United States

dered to said company by defendant in assisting to carry an Oklahoma County bond election to a successful conclusion. He not only rendered such services but employed his father and an uncle to assist in said campaign, and Metropolitan paid considerable sums of money directly to the defendant, his father and his uncle for said services.

The Internal Revenue Department (hereinafter referred to as the Department) investigated the returns submitted by defendant for the years 1946 to 1950, inclusive, which investigations disclosed the payments received by the defendant and those received by his father and uncle from Metropolitan. The Department contends that all of said payments from Metropolitan were due to the defendant and no portion thereof to the father and uncle. The defendant contends that his father and uncle were actually employed in the campaign and were entitled to compensation for the services rendered. These investigations continued for some two years and involved many conferences between the defendant, his attorney and the taxing authorities. On May 8, 1953, the Department made a tax deficiency assessment against defendant of $22,246.26 with penalties of $7,233.63, which amount of $29,479.89 was paid by defendant on November 17, 1953, and thereafter, on December 23, 1953, the defendant paid accrued interest of $7,227.17, or a total sum of $36,707.06.

This deficiency assessment was based on the theory that the defendant had no right to direct payments to his father and uncle. While the defendant insisted that the moneys paid to his father and uncle were earned by them and reported in their tax returns, on which the tax was paid.

The history of the tax records of the defendant for 1946 through 1950, insofar as the Metropolitan payments are concerned, was offered in evidence solely for the purpose of showing the intent on the part of the defendant to evade payment of the tax—that if the whole income from Metropolitan had been paid to the defendant directly a much greater tax would have been paid—and as contended by the government, is competent to show the intent of the taxpayer in the transaction involved in this criminal prosecution.

The information under which the defendant is being prosecuted here is based upon his tax return made on March 15, 1951, for the calendar year 1950, upon income which defendant is alleged to have received from Gorand Maps, Inc., of Chicago, (hereinafter referred to as Gorand.) The history of that transaction becomes material.

The Highway Commission of the State of Oklahoma invited bids for the printing of highway maps of Oklahoma. The defendant being in the printing business, had conferences with the Highway Commission but determined that his company lacked the facilities to perform the printing job required, and the defendant then solicited Gorand to investigate said printing job. As a result of said invitation, the representative of Gorand came to Oklahoma City, investigated said printing job, submitted a bid, was found to be the lowest and best bidder, and was awarded the contract for said maps. For such services rendered by defendant on behalf of Gorand, the defendant was made the agent and sales representative for Gorand in Oklahoma and as such was paid commissions. The defendant did not report the Gorand commissions payable to him during the year 1950 in the sum of $3,840, which he had assigned to his aged father and mother. He stated that he sincerely believed that since he had assigned said commissions to his parents, and inasmuch as they had received and retained such sums, the law was fully complied with when his parents reported same and paid the tax thereon. The contention of the government is that the defendant is liable for the tax on the sums of money which he had assigned to his parents.

At the time of the deficiency assessment made on May 8, 1953, the Department had knowledge of the $3,840 which had been paid directly to the defendant's

parents from Gorand and that they had reported same for the year 1950 and paid the tax thereon.

The element of criminality in this case is the willful and knowing attempt to evade and defeat a large part of the income tax due and owing by defendant and his wife for said calendar year 1950.

This case having been submitted to the court without a jury, the court sits in the place of a jury in determining whether or not there was a willful and knowing attempt to evade taxes, and that conclusion must be reached beyond a reasonable doubt. In other words, if there is a reasonable doubt as to whether or not there was a willful intent to evade the tax then the defendant must be found to be not guilty.

The income tax law is basically a law providing for the collection of taxes on income and strictly speaking is not a criminal statute. Under the Act the determination of the amount of income and the proper amount of tax due thereon is primarily for the Revenue Department. Whether or not a taxpayer has committed a criminal act is a matter for the courts to determine.

The income tax law is most difficult to interpret. The services of an expert are necessary in the preparation of most returns. And experts, lawyers and courts disagree on the interpretation of many sections of the statute. Where there are conflicts of opinion as to form of return, amounts of income, the proper tax thereon, or time of filing return, understatement of income, or lack of good faith, a deficiency assessment with a heavy penalty and interest results.

In United States v. Rosenblum, 7 Cir., 176 F.2d 321, 329, certiorari denied 338 U.S. 893, 70 S.Ct. 239, 94 L.Ed. 548, the court said:

> "The question of wilfulness is one of fact to be determined by the jury or the trial judge from all the circumstances."

And in United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381, the court said the term "willfully," when used in a criminal statute, denotes "an act done with a bad purpose" and *"without ground for believing it is lawful."* And further that "Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his *mere failure to measure up to the prescribed standard of conduct."* (Emphasis supplied.)

In Spies v. United States, 317 U.S. 492, 498, 63 S.Ct. 364, 367, 87 L.Ed. 418, the court said:

> " * * * But in view of our traditional aversion to imprisonment for debt, we would not without the clearest manifestation of Congressional intent assume that *mere knowing and intentional default in payment of a tax* where there had been no willful failure to disclose the liability is intended to constitute a criminal offense of any degree. We would expect willfulness in such a case to include some element of evil motive and want of justification in view of all the financial circumstances of the taxpayer." (Emphasis supplied.)

In Holland v. United States, 348 U.S. 121, 126, 139, 75 S.Ct. 127, 130, 99 L.Ed. 150, decided December 6, 1954, the court said:

> " * * * Unlike civil actions for the recovery of deficiencies, where the determinations of the Commissioner have prima facie validity, the prosecution must always prove the criminal charge beyond a reasonable doubt. * * *
>
> * * * * * *
>
> "A final element necessary for conviction is willfulness. The petitioners contend that willfulness 'involves a specific intent which must be proven by independent evidence and which cannot be inferred *from the mere understatement* of income.' This is a fair statement of the rule. * * * " (Emphasis supplied.)

The defendant contends that he acted in good faith and without any willful intent to evade his tax obligation. There is no question but that defendant had a legal right to assign this income to his father and mother. It is true that had he paid the tax on the entire amount he would have paid a greater tax than that which his return indicated, but assuming that he believed that he had a legal right to make said assignment to his parents and that said sums would be reported by them and the tax paid thereon, said arrangement would have been no violation of the criminal statute. This is exactly what occurred in the Metropolitan payments covering the years 1946 through 1950. In that instance the government accepted payment of the deficiency assessment plus penalties and interest in the total sum of $36,707.06, but in regard to the Gorand transaction, the government refused to make an assessment and instituted criminal prosecution, although defendant expressed a willingness to pay a deficiency assessment in accordance with the Department's calculations.

The government contends that there is a distinction between civil and criminal fraud. In other words, if the government is of the opinion there was fraud in a civil transaction, it can be cured by the assessment of a penalty, but if the government is of the opinion that criminal prosecution should be instituted, it can then make what it has designated a civil fraud in one instance a criminal fraud in another instance.

The Department has ample means of securing the payment of taxes where the taxpayer is able to pay it, and in this case, with all the facts before it, the Department declined to make a deficiency assessment together with a fraud penalty and interest, but instituted criminal prosecution.

Certainly a taxpayer is obligated to pay his taxes, but the government at all times is under obligation to be fair and reasonable with the taxpayer. The payment of taxes today, it is admitted, has become a heavy burden and it is difficult at times to know what one's net income actually is, but where under the civil law, ample means are available to correct any miscalculations on the part of the taxpayer and secure the payment of the full legal tax, why is it necessary to resort to criminal prosecution? Payment of a tax is an important matter, but the liberty of an individual is a more serious matter, and in this court it is a serious matter to render a judgment of conviction against a citizen who has no prior criminal record of any character and thus attach to him a stigma which not only lasts as long as he lives but will remain a stigma on his posterity.

In the Metropolitan transaction there was no impropriety in Metropolitan paying directly to the defendant's father and uncle for services they actually rendered in the county bond election even though the sums paid them were ordered paid them by the defendant, and from the facts as stipulated, had the defendant contested in court the deficiency assessment to which he finally agreed, there is a strong probability that the deficiency assessment would have been held to be unjustified and illegal.

There is also an inferential basis for believing that the settlement made by the defendant was to avoid the embarrassment and humiliation of a criminal prosecution.

In the Gorand transaction involved in this prosecution, the act of the defendant could have been considered as "a mere understatement of income" and the case settled as a civil rather than a criminal matter. This appears more equitable since the $3,840 in question was reported by the father and mother of the defendant in their return for 1950, on which the tax was paid, and nothing was concealed from the Department. This case should have been handled and settled as a civil matter and the government would have lost nothing by so doing.

The court therefore finds the defendant not guilty as charged.