**UNITED STATES of America,**
**Plaintiff,**

v.

**Dominic S. FAGO, Defendant.**

**Cr. A. 6353-C.**

United States District Court
W. D. New York.

May 14, 1958.

John O. Henderson, U. S. Atty., Buffalo, N. Y. (John T. Elfvin, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for plaintiff.

Hyman Karnofsky, Buffalo, N. Y., for defendant.

MORGAN, District Judge.

By an information filed July 9, 1954, the United States charged the defendant, Dominic S. Fago, as President of K & F Packing and Food Corporation, with its principal office in Corfu in the State and Western District of New York, in a six count information with violating Section 2702, sub. (b) Title 26 U.S.C.A.* for willful failure (1) to pay on its quarterly employer's federal withholding tax return and the federal income taxes so withheld from its employees for the period March 31, 1951 to June 30, 1951 inclusive, in the amount of $2,816.38. The employer's return was required to be filed on or before July 31, 1951. That Dominic S. Fago, as President, well knowing his duty to make such a return and pay such taxes, did willfully and knowingly fail to pay such taxes in violation of Section 2707(b) of Title 26 U.S.C.; (2) to pay Federal Insurance Contribution Act taxes in the sum of $552.29 for the period March 31, 1951 to June 30, 1951, inclusive; (3) to file with the Collector of Internal Revenue an employer's quarterly federal tax return for withheld income taxes from its employees in the sum of $1,128.10 for the period June 30, 1951 to September 30, 1951; (4) to file F.I.C.A. tax return in the sum of $199.05 for the period June 30, 1951 to September 30, 1951; (5) to file with the Collector of Internal Revenue an employer's quarterly federal tax return for withheld income

---

\* All references to sections and subdivisions of Title 26 U.S.C. are to the

Internal Revenue Code of 1939, as amended.

taxes from its employees in the sum of $23.20 for the period September 30, 1951 to December 31, 1951; (6) to file an F.I.C.A. tax return totalling $10.50 for the period September 30, 1951 to December 31, 1951.

Section 1622(d) Title 26 U.S.C. provides:

"Tax paid by recipient. If the employer, in violation of the provisions of this subchapter, fails to deduct and withhold the tax under this subchapter, and thereafter the tax against which such tax may be credited is paid, the tax so required to be deducted and withheld shall not be collected from the employer; but this subsection shall in no case relieve the employer from liability for any penalties or additions to the tax otherwise applicable in respect of such failure to deduct and withhold."

Section 1400 Title 26 U.S.C. imposes the rate of tax to be collected on income paid to the individual for Social Security purposes, known as F.I.C.A. taxes.

Section 2707(b) provides:

"Any person required under this subchapter to pay any tax, or required by law or regulations made under authority thereof to make a return, keep any records, or supply any information, for the purposes of the computation, assessment, or collection of any tax imposed by this subchapter *who willfully fails to pay such tax, make such returns,* keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both, together with the costs of prosecution." (Emphasis supplied.)

Section 2707(d) provides:

"The term 'person' as used in this section includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

Trial was before this court, the defendant having waived his right to a jury trial. Various Internal Revenue Service agents testified that they had conversations with the defendant and other people in order to obtain the necessary payroll records and documents in order to reconstruct the amount of withholding and F.I.C.A. taxes withheld, but not paid over by the K & F Packing and Food Corporation.

The origin of the entire matter apparently had its beginning with government contracts for the canning of meat for the Army and Navy, supposedly obtained by one Anthony Forte. The Hans Daube meat-packing plant was allegedly purchased and additions were constructed when the aforesaid Hans Daube was sojourning on foreign soil. In the interim, the operation in Corfu was divided into the slaughtering of cattle and the construction of an addition. The court was not advised whether the additional construction took place on Daube's land or on adjacent property owned by Louis Christ. Neverthless, the slaughtering of cattle et al. continued for some months. Withholding taxes and also the social security taxes were deducted from wages of employees. Testimony adduced indicated that in its inception, K & F was dominated by defendant, his brother Joseph Fago, Anthony Forte and Lawrence Christ. There were others, but their roles were either in a supervisory or clerical capacity.

The evidence is uncontradicted that K & F Packing and Food Corporation was duly incorporated as shown by Certificate of Incorporation filed with the Secretary of State of the State of New York on March 15, 1951. The original incorporators were Hyman Karnofsky, defendant's trial counsel, and two others. No sworn testimony was adduced that the original incorporators ever resigned, although statements were made to that effect by

defendant's trial counsel. The reputed officers of K & F, to wit, Joseph Fago, Eleanor Wolfe Manzella, Lawrence Christ, all testified that they never attended any corporate meeting wherein election of directors or officers took place, no one ever saw the stock book, minute book, bylaws or certificate of incorporation. The seal was admittedly seen by all the above mentioned persons. The trial was lengthy and punctuated with numerous vigorous and extensive objections to the proof offered by the Government. Witnesses were many and the testimony was contradictory and, in many areas of vital dispute, conveniently forgotten.

On July 30, 1951, the K & F filed its second quarterly return signed by Lawrence E. Christ, as Secretary, showing a withholding tax of $1258.48 and F.I.C.A. taxes in the sum of $344.66 for a total tax of $1,603.14 (Exhibit B). The Government computed the total withholding for the second quarter of 1951 to be $2816.38, with a credit of $1258.48 as above, leaving a balance on the withholding of $1,557.90 and total F.I.C.A. taxes in the amount of $1,104.58 with a credit of $344.66, leaving a balance of $759.92. Nevertheless, a special assessment was filed against the defendant, Joseph Fago and Lawrence Christ for withholding and F.I.C.A. taxes for the period April 1, 1951 to June 30, 1951 in the sum of $1,603.14 and paid in said amount on August 11, 1953.

Section 405.601 of the Code of Federal Regulation provides that

"(a) Every person required under the provisions of section 1622, I.R.C., to deduct and withhold the taxes or wages shall make a return and pay such tax on or before the last day of the month following the close of each of the quarters ending March 31, June 30, September 30 and December 31."

"(e) If the person required to withhold and pay the tax under Section 1622 is a corporation, the return shall be made in the name of the corporation and shall be signed and verified by the president, vice president, or other principal officer."

On May 25, 1951, the K & F Packing and Food Corporation opened a Payroll and Special account at the M & T Bank in Corfu, New York. The corporate resolution was signed by Lawrence E. Christ, as Secretary, and stated the officers of the corporation were as follows: D. S. Fago president; Eleanor Wolfe, Assistant-Treasurer and Lawrence E. Christ, Secretary (Government Exhibit 30, 31) with any two officers authorized to sign checks.

Thereafter, new deposit cards were given to the M & T Bank at Corfu with the corporate resolution being signed by Lawrence E. Christ, as Secretary. These deposit cards showed (Exhibit 41-48) that D. S. Fago was President, Joseph Fago, Vice President and Lawrence Christ, Secretary, of K & F. The officer authorized to sign checks varied, with the defendant eventually being the sole officer authorized to sign checks at the M & T Corfu office. (Exhibit 46)

The payroll records for the K & F for the period May 6, 1951 to August 25, 1951 were not admitted into evidence because of the inability of the Government to connect up the payroll to the defendant in any way. (Tr. 62)

Robert H. Murray, one of the government witnesses, admitted on cross examination that his investigation revealed that in addition to D. S. Fago, the President, K & F had the following officers: Lawrence Christ, Secretary; Joseph Fago and Eleanor Wolfe as Assistant-Treasurer (Pages 104, 107). Whether these officers remained with the corporation until its demise in November 1951 was not revealed by Mr. Murray.

Hans Daube, the owner of the Corfu Packing Plant, where K & F was situated, testified that he had dealings only with Mr. Forte with respect to the purchase of Daube's Packing Plant in Corfu, but that he knew nothing about the corporate setup of K & F except that the defendant told him that he was the President.

Eleanor Wolfe Manzella testified that she worked for K & F for about 8–10 weeks at the Corfu plant; that she typed letters and helped to make out some payroll checks, typed bills and other little things that needed to be typed, and that Dominic Fago was hardly ever at Corfu; Mrs. Manzella had no knowledge of K & F's officers and knew little about K & F's business. She worked for Permanent Residences, Orleans Construction Co. and Hughes Provision in Cleveland, but had no idea who the directors or officers were, didn't attend any meetings and did not see a corporate stock book or certificate of incorporation.

Catherine Doktor stated that she was employed by the K & F in 1951 for about four or five months. She made out the payroll and typed checks, worked with Eleanor Wolfe Manzella under the supervision of Alfred May. The payroll was made out from information and data supplied by another person, whose identity was unknown to her. She did not remember who the officers of K & F were, did not make up W–2 forms. She just typed the payroll checks after completing same and that's all she remembered. She didn't remember who brought in the time cards from which the payroll was completed. She took her orders from Mrs. Manzella and Mr. May. She saw the defendant at Corfu "not every day—he was in and out."

Eugene Chmura testified at Page 613 that an assessment for the second quarter of 1951 was made against Dominic Fago, Joseph Fago and Lawrence Christ, and that this assessment was based upon their relationship as officers of K & F. The defendant was never asked by the department to pay the delinquent taxes personally. (Tr. 620)

Lawrence Christ admitted signing his name on the deposit bank cards as Secretary, and signing the second quarter tax return (Exhibit B) as Secretary, but steadfastly denied that he participated in any capacity as an officer of K & F, a fact which strains credulity when you consider that for the first five weeks, Lawrence Christ admitted making out the construction payroll, was at Corfu practically every day and lived at the plant, since he was single.

Joseph Fago stated that he was Vice President of K & F, defendant was President, Larry Christ was Secretary and Treasurer and Tony Forte, Chairman of the Board; that Mrs. Manzella was also an officer; and Louis Christ (father of Lawrence Christ) was never active in the corporation. Joseph Fago left in August or September, 1951. Joseph Fago did not know whether he signed any check after September 1, 1951, but he recollected leaving K & F before Larry Christ did.

K & F admittedly went out of business in November, 1951. The fifth and sixth counts of the indictment charge a failure to file a tax return for the said fourth quarter of 1951, with withholding taxes amounting to $23.20 and F.I.C.A. taxes in the sum of $10.50. Exhibit 54 is the only documentary evidence pertaining to the fourth quarter of 1951 and was taken subject to being connected up, or otherwise not to be considered. The payroll record contained in Exhibit 54 covered the weeks of November 10, 17 and 24th. While Eleanor Manzella identified Exhibit 54 as being her work product, she could not remember from whom the data or information came in order to calculate the amount of withholding from wages etc., and she reiterated the statement that no one helped her in the preparation of the payroll sheets. It is the opinion of this court that the payroll records for the fourth quarter are not sufficiently definite as to bind the defendant in this type of a criminal prosecution.

Section 2707(b) Title 26 states that any person required to pay any tax who willfully fails to pay such tax, make such return * * * shall be guilty of a misdemeanor * * * Section 2707 (d) defines a person as an "officer or employee of a corporation * * * who as such officer or employee * * * is under a duty to perform the act in respect of which the violation occurs." In addition, Section 405.601 C.F.R. sub. (e) states, "If the person required to withhold * * * is a corporation, the re-

turn shall be made * * * and shall be signed by the president, vice president or other principal officer." The government, in order to prevail, had to show that the defendant fitted into one of the categories as outlined above. The proof was rendered difficult by openly hostile and forgetful witnesses. It became readily apparent to the court that certain witnesses had conveniently faulty memories in not remembering some of the vital facts so necessary to the government's proof. This court questioned some of the witnesses at great length, but did not succeed in piercing the forgetful memory.

■ While the testimony tended to show that the defendant might have been a prime mover in K & F, there was sufficient believable evidence to indicate that there were other reputed de facto officers of the defunct corporation so as to at least cast a doubt as to whether the defendant should or could be classed as the officer or person whose duty it was to file the respective withholding and F.I.C.A. returns for the last three quarters of 1951 in violation of Sec. 2007. Cushman v. Wood, D.C., 149 F.Supp. 644.

The term willfully has been interpreted to mean many things. It is used to characterize purpose or motive as distinguished from knowledge and intention. Kellems v. U. S., D.C., 97 F.Supp. 681. In criminal revenue statutes, willfully has been construed to mean and denote an act done with evil motive, bad purpose or corrupt design. United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381; Spies v. U. S., 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418. In Wilson v. U. S., 9 Cir., 250 F.2d 312, at page 319, the court said, "*we would not* without the clearest manifestation of Congressional intent *assume that mere knowing and intentional default in payment of a tax where there had been no willful failure to disclose the liability is intended to constitute a criminal offense of any degree* * * * 317 U.S. at pages 497-498, 63 S.Ct. at page 367 (Emphasis added)"

The tenor of defendant's conduct was and has been reprehensible to say the least, with a past history of clever dealings, as far as the government is concerned. Whether that be sufficient to convict him is immaterial so long as this court finds that the defendant was not one of those persons classed within Sec. 2707(d) Title 26. The court has no alternative but to dismiss the indictment and discharge the defendant. It is so ordered.