PEOPLE OF THE TERRITORY OF GUAM, Plaintiff

v.

GUAM FEDERATION OF TEACHERS, LOCAL NO. 1581, AFT, CONRAD STINSON, President and ALL OFFICERS THEREOF, and ALL ACTING IN CONCERT THEREWITH, Defendants

Civil No. 1389-75

Superior Court of Guam

September 15, 1975

288

ABBATE, *Judge*

## DECISION

On September 5, 1975, this Court rendered an interim opinion in the above-entitled matter solely because of the immediate urgency to settle this dispute, which arose between the Department of Education and the Guam Federation of Teachers, Local 1581. In this interim decision, the Court declared valid and in effect the three year agreement between the Territorial Board of Education and the Guam Federation of Teachers. It further determined that the acts of the defendants did not fall within the purview of Section 4376 defining strikes. It declared void Section 39 of Public Law 13–37 as violating Section 29(b) and Section 5(j) of the Organic Act of Guam. This Court further held that Executive Order No. 75-38 did not abrogate the terms of the three year agreement. A period of forty-five (45) days was provided to allow for a smooth transition in order that Department of Education may comply with the terms of the agreement.

The plaintiff, the People of the Territory of Guam hereinafter referred to as the Government, commenced a civil action arising under Section 4378 of Chapter VI, Title V of the Government of Guam against the Guam Federation of Teachers alleging, among other things, that defendant's Union members acted in concert announcing and stating their refusal to accept children in excess of the ratio as set forth in the agreement. (See Paragraph 8 of the complaint.) The complaint further alleges a refusal to instruct 300 minutes (see Paragraph 9 of the complaint), and the defendants inspired and incited others to assist in the conduct as set forth in Paragraphs 8 and 9 of the complaint (Paragraph 10).

The relief sought here by the Government is that they be granted a permanent restraining order from continuing the acts as set forth in the complaint.

The defendant Union thereafter on August 28, 1975, filed an answer to the complaint filed denying in substance the allegation of the complaint, and filed on August 29, 1975, a counterclaim. In the said counterclaim, the defendants seek specific performance and observance of all the terms of the three year agreement. They also seek to enjoin the Government, its Board of Education, its Director of Education, agents, and servants from giving any directives, orders, or instructions which would be contra to the above aforementioned agreement.

This dispute arose as a result of the existence of an agreement called "Three Year Agreement." The parties to the agreement are the Territorial Board of Education and the Guam Federation of Teachers. The agreement was ratified by the duly appointed representatives of the respective parties on October 1, 1972, and approved pursuant to law by Carlos G. Camacho, the then duly elected Governor of Guam on October 3, 1972. In the said

agreement under Article XIII, it provides for the duration of the contract. In the article, it provides that it shall remain in effect until June 13, 1975, and renewable from year to year unless certain conditions are met. The most important sentence is the fact that the contract shall remain in effect until a new contract is ratified.

The 13th Guam Legislature passed Public Law 13–37, and it became law on June 27, 1975. In this public law, we find Section 39 (subsections A thru S), which dictates to the Department of Education certain directives regarding substitute teachers, librarians, counselors, assistant principals, and the entire spectrum of personnel administration. It further speaks of and establishes a teacher ratio, which is diametrically opposite to that provided in Chapter V of the Third Party Agreement. It also includes the transfer of Driver Education Program, travel, and various other and sundry matters concerning the administration of our public school system.

Our public schools opened their doors to commence another year and as school bells rang, registration of the pupils began. The defendant Union, armed with the contract, refused to accept any students beyond the ratio as set forth in the contract. On August 21, 1975, the Governor, under powers delegated to him (Section 29(b) Organic Act), issued Executive Order No. 75-38, wherein he cites that portion of the Organic Act giving him the power to establish, maintain, and operate public schools in the Territory of Guam. In this executive order, he re-affirms the authority of the Board of Education as a policy making body, which governs primary and secondary schools, and further re-affirms the principle of Collective Bargaining. There is a directive in the executive order to the Board of Education to use its best judgment in matters of class sizes, instructional time, administrative and personnel leave, determining curriculum. In this in-

strument, the Governor makes mention of the existing contract, budget limitations, and appropriations.

The defendants positioned themselves in the legal arena armed with a contract and seek enforcement of the provisions of this Three Year Agreement. The Government, on the other hand, seeks injunctive relief restraining activities of union members.

*The Three Year Agreement between the Territorial Board of Education and the Guam Federation of Teachers Local is valid and subsisting.*

A close examination of Article XIII entitled Duration as set forth in the Three Year Agreement, gives this Court no problem in reaching a conclusion that it is a valid and subsisting contract in full force and effect. The language is clear in the wording "notwithstanding the first sentence of this Article, the provisions of this contract will remain in effect until a *new contract is ratified and put in effect."* The first sentence recites a termination date. What other interpretation could be given than that reached by the Court. To rule otherwise would do violence to reason.

*That the activities of the defendants did not constitute a strike within the meaning of Section 4376 of the Government Code of Guam.*

On the opening of school day, students of our public schools entering in the halls of learning, were advised that the union member teachers would not register students in excess of that provided for under the terms of the contract (see Article V). The Government contends that these activities as set forth in their complaint, Paragraphs 8, 9, and 10, constituted a strike. Section 4376 of the Government Code states that:

It shall be unlawful:

(a) For any government employee to participate in any strike against the government.

(b) For any person, by picketing or otherwise to instigate, induce, procure, order, direct, coerce, or incite any violation of this Chapter, or to undertake to concert with another to violate this Chapter.

In Section 4375 of the Government Code of Guam, the word strike is defined as temporary stoppage, slowdown or the retardation of work or services by concerted action of employees. How could it be said that the activities of the defendant members constituted a strike? In a careful examination of their activities, they embarked upon school registration insulated with the collective bargaining agreement, which was valid and in effect at the time of registration. Was there really a retardation of work or services by concerted action to fall within the strike definition? This Court thinks not. The chaotic condition, if one existed, was generated by the administrative guidelines and legislative intervention (Public Law 13–37, Section 39). To grant injunctive relief sought herein would cause a malignant growth to justice.

*That a period of forty-five (45) days be allowed Government to comply with the Three Year Agreement.*

This Court has set a period of time namely forty-five (45) days to allow the Government, the Director of Education, its agents and servants to re-arrange, alter, or modify classroom schedules and other instructional teaching consistent with the terms of the contract. This period of time, it is felt, is a reasonable period for compliance.

*That Public Law 13–37, Section 39 is void as it violates Section 29(b) and Section 5(j) of the Organic Act of Guam.*

The legislature of Guam saw fit to create legislation that invaded the power of those delegated to the Executive Branch of the territory. The Organic Act of Guam, Section

293

11 grants powers to the legislature to all subjects of legislation of local application not inconsistent with the provisions of the Organic Act. On reading Section 29(b) of the Organic Act, this Court has little difficulty in reaching the conclusion that such legislative intervention invaded powers specifically delegated. Section 29(b) states:

(b) The Governor shall provide an adequate public educational system of Guam, and to that end shall establish, maintain, and operate public schools at such places in Guam as may be necessary.

The Government contends that a fiscal emergency existed and that there was an exercise of police powers in the passage of Section 39 of Public Law 13–37. This position is untenable. It is quite clear that exclusive power to maintain and operate the school system was delegated to the Governor and not in the halls of the legislature. It is therefore quite clear that the legislature is without any authority to involve itself in the internal affairs of the educational system.

*That the Executive Order No. 75-38 did not abrogate any of the terms of the existing Three Year Agreement.*

In the Governor's Executive Order No. 75-38, it cites authority to maintain and establish the school systems. (See § 29 Organic Act supra.) The executive order is simply a display that all matters set forth in Section 39 of Public Law 13–37 is not within the power of the legislature. It further speaks of the existing contract and asks the Board to guide the Department in its operation and personnel matters, including actual class size and instructional time. The Attorney General, who appeared in this action, urged the Court that the Governor exercised his police powers in the issuance of this executive order. Once it is determined that the Executive Branch is the appropriate agency to exercise this residual power, the next matter

to determine is whether or not this power was exercised. This Court is of the opinion that Executive Order No. 75-38 does not constitute such exercise. Rather, this order merely may be characterized as a general statement by the Governor of the relative relationship of the Executive and Legislative Branches, with respect to the educational system on Guam. It further demonstrates an equally general statement of the executive's position with respect to the potential conflict between the existing agreement and budget limitations. Nowhere has this executive order displayed mention of emergency conditions, which requires him to nullify contract provisions, or that in fact any of the provisions were thereby invalidated. Therefore, it can be concluded that this order is equally found wanting as an exercise by a government entity to nullify certain contract provisions to preserve the common good. Because use of police powers can affect fundamental constitutionally, as well as organically, protected rights, it must be used with utmost caution and only upon showing a real genuine cause. (See *Home Building and Loan Assn. v. Blaisdell*, 290 U.S. 395.)

The Government further contends that the contract provisions is a nullity by operation of § 4411 of the Government Code of Guam.

Section 4411 states:

Government management officials shall retain the right and responsibility, in accordance with applicable law and regulations to (a) maintain efficient government operations and direct public employees, (b) hire, promote, transfer and assign employees to government positions, (c) suspend, demote, discharge, or take other disciplinary action against employees for just cause, (d) to determine the methods, organization, and assignment of personnel for the conduct of operations, including necessary actions in emergency situations.

This section makes it unlawful for certain management responsibilities to be relinquished by those duly

295

entrusted with them. The Government argues that the provisions set forth in Article V of the Three Year Agreement are contra to § 4411 of the Government Code of Guam. In support of this contention, the Government cites *Jefferson Elementary School District v. Bert,* 116 California Reporter 554 (1974). The Jefferson case has no value to support the position of the Government simply because the education structure of Guam and California are different. The educational system in California is unique. This Court can hold no other opinion than that the specific provisions, which are alleged to constitute "Ultra Vires" acts in conjunction with section 4411 of the Government Code of Guam, cannot be characterized as such. The only possible language in § 4411 subsection (d) "to determine the methods, organization, and assignment of personnel for the conduct of operations, including necessary actions in emergency situations." This portion of the section, read in its broadest fashion, does not appear to this Court to preclude the bargaining away of authority over class sizes or number of hours taught.

Therefore in view of the foregoing, the motion to dismiss the complaint of the Government is hereby granted, to the extent that the temporary injunction will continue for a period of forty-five (45) days to allow the Government time to re-assess the personnel to comply with the contract. The interim decision made by this Court on September 5, 1975, is hereby incorporated in this decision by reference.

Submit findings of fact and conclusions of law, giving the Government ten (10) days notice of presentment.