**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert LUXON, Joe Adams, Home Loose**
**Leaf Tobacco Warehouse, Inc.,**
**Defendants.**

**No. 5351.**

United States District Court
E. D. Kentucky.

Sept. 19, 1958.

26

Henry J. Cook, U. S. Atty., Lexington, Ky., Jean L. Auxier, Asst. U. S. Atty., Pikesville, Ky., for plaintiff.

Chenault & Coy, James S. Chenault, Charles R. Coy, Richmond, Ky., for defendants.

HIRAM CHURCH FORD, Chief Judge.

By motion to dismiss, the defendants challenge the validity of the four-count indictment in this case upon the ground that it "does not state facts sufficient to constitute an offense by the defendants, or any of them, against the United States." While the motion to dismiss upon its face appears to be directed to all four counts of the indictment, briefs filed by defendants in support of their motion direct their contentions only to the insufficiency of counts 1, 2 and 3 and make no mention or reference to count 4.

The crimes charged in the three questioned counts are purely statutory offenses described in the Act of June 29, 1948, 62 Stat. 1070, by which, "for the purpose of stablizing, supporting, and protecting farm income and prices," Congress created the Commodity Credit Corporation and provided that it "shall be an agency and instrumentality of the United States, within the Department of Agriculture" (15 U.S.C.A. § 714) with authority to the corporation

to utilize associations of producers and trade facilities in the conduct of its business (15 U.S.C.A. § 714j). "Its capital was provided by congressional appropriation. * * * In brief, Commodity is simply an administrative device established by Congress for the purpose of carrying out federal farm programs with public funds." Rainwater v. United States, 356 U.S. 590, 591, 592, 78 S.Ct. 946, 948, 2 L.Ed.2d 996.

Obviously, for the protection of the Government and its agency so created, Congress enacted section 15 of the Act (§§ 714m(a) and 714m(d) of Title 15 U.S.C.A.) as follows:

"§ 714m. (a) Whoever makes any statement knowing it to be false, and whoever willfully overvalues any security, for the purpose of influencing in any way the action of the Corporation, or for the purpose of obtaining for himself or another, money, property, or anything

of value, under sections 714–714o of this title, or under any other Act applicable to the Corporation, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment by not more than five years, or both.

* * * * *

"(d) Whoever conspires with another to accomplish any of the acts made unlawful by the preceding provisions of this section shall, upon conviction thereof, be subject to the same fine or imprisonment, or both, as is applicable in the case of conviction for doing such unlawful acts."

Count 1 of the indictment charges a conspiracy under § 714m(d) to accomplish acts made unlawful by the preceding provision § 714m(a), and the second and third counts of the indictment charge the substantive offenses made unlawful by § 714m(a).[1]

1. "Count 1.
(Title 15, Sec. 14(d), U.S.C.A.)
"The Grand Jury Charges:

"That prior to the 30th day of November, 1954, and up to and including the 7th day of December, 1954, at Richmond, Madison County, in the Eastern District of Kentucky,
Robert Luxon,
Joe Adams and
Home Loose Leaf Tobacco
Warehouse, Inc.,
a corporation,
did unlawfully conspire to commit an offense against the United States, towit, to violate Sec. 714m(a), Title 15, United States Code, in that at said time and at said place, said defendants did conspire together to make and cause to be made statements for the purpose of influencing the action of the Commodity Credit Corporation, an agency and instrumentality of the United States Department of Agriculture, and for the purpose of obtaining money under Sec[s.] 714–714o, Title 15, U.S.C.A., the said defendants knowing said statements to be false; more specifically, during said time and at said place and for the purpose of obtaining for Robert Luxon and Joe Adams support prices from the Commodity Credit Corporation, did conspire together to certify to the Burley Tobacco Growers Cooperative Association that certain

tobacco was first sale tobacco, when in truth and in fact, said tobacco was resale tobacco purchased by the said Robert Luxon and Joe Adams from producers and therefore ineligible for support prices and for the purpose of carrying out the aforesaid conspiracy, said defendants committed the following overt acts:

"1. On November 30, 1954, Robert Luxon and Joe Adams sold 350 pounds of tobacco at the Home Loose Leaf Tobacco Warehouse, Inc.

"2. On November 30, 1954, the Home Loose Leaf Tobacco Warehouse, Inc., certified to the Burley Tobacco Growers Cooperative Association that 350 pounds of tobacco was first sale tobacco.

"3. On December 7, 1954, Robert Luxon and Joe Adams sold 1,208 pounds of tobacco at the Home Loose Leaf Tobacco Warehouse, Inc.

"4. On December 7, 1954, the Home Loose Leaf Tobacco Warehouse, Inc., certified to the Burley Tobacco Growers Cooperative Association that 1,208 pounds of tobacco was first sale tobacco.

"Count 2.
(Title 15, Sec. 714m, U.S.C.A.)
"The Grand Jury Further Charges:

"That on or about the 30th day of November, 1954, at Richmond, Madison County, in the Eastern District of Kentucky,

The defendants rest their claims of deficiency in these first three counts of the indictment upon the failure of each count to charge (1) that any relationship existed between the Burley Tobacco Growers Cooperative Association, to whom the false statements are alleged to have been made by the defendants for the proscribed purpose, and the Commodity Credit Corporation; (2) that the alleged false statements made by the defendants or any of them were ever transmitted or communicated to the Commodity Credit Corporation; (3) that the Commodity Credit Corporation was in fact deceived by or relied upon such false statements; (4) that any of the defendants ever received anything of value from the Commodity Credit Corporation, and (5) that such statements constitute false representations of material facts.

■ The substance of defendants' argument seems to be that, notwithstanding the fact that the statute does not enumerate any of the above mentioned facts as essential elements of the crimes, nevertheless the statute is in effect "a false pretense statute" and hence the indictment must allege the essential elements of the common law crime of obtaining property or money under false pretenses. This contention seems clearly untenable for the essence of the crime stated in the first count of the indictment is the combination or agreement constituting a conspiracy to commit an offense defined in the statute, attended by one or more overt acts to effect its object, which is punishable regardless of whether the contemplated crime is consummated. United States v. Bayer, 331 U.S. 532, 542, 67 S.Ct. 1394, 91 L.Ed. 1654; Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489. The essence of the substantive offenses charged in counts 2 and 3 is the making of a statement, knowing it to be false, for the purpose of influencing the action of the Commodity Credit Corporation or for the purpose of obtaining money under the provisions of the Commodity Credit Corporation Act, §§ 714–714o of Title 15 U.S.C.A.

A construction of the Act so as to include the elements above enumerated by

Robert Luxon,
Joe Adams, and
Home Loose Leaf Tobacco Warehouse, Inc.,
made and caused to be made a statement for the purpose of influencing the action of the Commodity Credit Corporation, an agency and instrumentality of the United States Department of Agriculture, and for the purpose of obtaining money under Sec[s.] 714–714o of Title 15, U.S.C.A. the said defendants knowing same to be false; in that at said time and place and for the purpose of obtaining for Robert Luxon and Joe Adams the support price of $220.50 from the Commodity Credit Corporation, did certify to the Burley Tobacco Growers Cooperative Association that 350 pounds of tobacco was first sale tobacco when, in truth and in fact, said defendants well knew said tobacco was re-sale tobacco purchased by the said Robert Luxon and Joe Adams from Warren Long, the producer, and therefore ineligible for support price.
"Count 3.
(Title 15, Sec. 714m, U.S.C.A.)
"The Grand Jury Further Charges:
"That on or about the 7th day of December, 1954, at Richmond, Madison County, in the Eastern District of Kentucky,

Robert Luxon,
Joe Adams and
Home Loose Leaf Tobacco Warehouse, Inc.,
a corporation,
made and caused to be made a statement for the purpose of influencing the action of the Commodity Credit Corporation, an agency and instrumentality of the United States Department of Agriculture, and for the purpose of obtaining money under Sec[s.] 714–714o of Title 15, U.S.C.A., the said defendants knowing same to be false; in that at said time and place and for the purpose of obtaining for Robert Luxon and Joe Adams the support price of $491.12 from the Commodity Credit Corporation, did certify to the Burley Tobacco Growers Cooperative Association that 1,208 pounds of tobacco was first sale to tobacco when, in truth and in fact, said defendants well knew said tobacco was re-sale tobacco purchased by the said Robert Luxon and Joe Adams from Roy Cates, the producer, and therefore ineligible for support price."

the defendants would result in limitations neither expressed in the statute nor justified in light of the purpose of the Commodity Credit Corporation Act. Cohen v. United States, 6 Cir., 178 F.2d 588, 598, certiorari denied 339 U.S. 920, 70 S.Ct. 623, 94 L.Ed. 1344; Ross v. United States, 6 Cir., 180 F.2d 160, 164; Kay v. United States, 303 U.S. 1, 6, 58 S. Ct. 468, 82 L.Ed. 607; United States v. Silver, 2 Cir., 235 F.2d 375, 377.

The statutory provisions defining the crimes charged in the first three counts of the indictment explicitly set forth the elements of the offenses and each of the questioned counts of the indictments sets forth these essential elements in the words of the statute.

"The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606." Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861; United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92.

Each of the counts of the indictment here in question adequately meets this test. Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which is designed to eliminate technicalities in criminal pleadings, is complied with. United States v. Debrow, supra.

For the reasons indicated, defendants' motion to dismiss the indictment should be denied.