**UNITED STATES of America,**
**Plaintiff,**

v.

**LOWTHER TRUCKING COMPANY,**
**Defendant.**

**No. CR–63–336–M.**

United States District Court
N. D. Alabama, S. D.

April 23, 1964.

Macon L. Weaver, U. S. Atty., R. Macey Taylor, Asst. U. S. Atty., Northern District of Alabama, Birmingham, Ala., Arthur F. Bronczyk, Trial Attorney, Interstate Commerce Commission, of counsel, for plaintiff.

Hawkins, Rhea & Wright, Gadsden, Ala., for defendant.

ALLGOOD, District Judge.

This cause having come on for trial by the Court, R. Macey Taylor, Assistant United States Attorney, and Arthur F. Bronczyk, Attorney, Interstate Commerce Commission, Attorneys for the Government, and George C. Hawkins of Hawkins & Rhea, Gadsden, Alabama, Attorney for the Defendant, the Court has considered the criminal information of the Government, the evidence educed at the trial and the briefs of counsel, and has arrived at Findings of Fact and Conclusions of Law as follows:

### Findings of Fact

This proceeding came before the Court on an Information filed against the Defendant, Lowther Trucking Company, a corporation, of Charlotte, North Carolina, by the United States Attorney for the Northern District of Alabama, on October 4, 1963, at Birmingham, Alabama. Defendant was charged in said information in ten (10) counts with violations of Section 206(a) of the Interstate Commerce Act (49 U.S.C.A. § 306(a)) which prohibits a common carrier by motor vehicle from engaging in the transportation of property in interstate or foreign commerce for compensation, without there being in force with respect to such carrier a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing such operations.

To the Information the Defendant entered a plea of not guilty. The case was tried before the Court on February 3, 1964, defendant having specifically waived the right to have the case tried by jury.

Defendant is found to be engaged in the motor carrier transportation business

as a common carrier authorized by the Interstate Commerce Commission, by virtue of certificates of public convenience and necessity as issued in Docket No. MC–114098 and various sub numbers thereunder, to engage in the transportation of various commodities in interstate commerce.

The offenses charged in the Information arise out of the transportation of dehydrated alfalfa meal, herein found to have been conducted by Defendant's trucks and drivers, for the account of the Alfalfa Growers Non-Stock Co-operative Association (hereinafter referred to as Alfalfa Co-operative), from Guntersville, Alabama, to points in North Carolina under alleged "motor vehicle leases" entered into by Defendant and the shipper, Alfalfa Co-operative, on a trip by trip basis.

The alleged leases of motor vehicle equipment by the Defendant to the Alfalfa Co-operative, were introduced in evidence in connection with each of the ten (10) instances of transportation charged in the Information. Each lease provided for the exclusive control and operation of the purportedly leased equipment by Alfalfa Co-operative for the term and duration of the trip in question. Each lease was declared to expire upon the delivery by the driver of the dehydrated alfalfa meal in North Carolina. Each lease further provided as follows: Defendant was to maintain full cargo, public liability and property damage insurance in relation to the operations of the equipment, to maintain said equipment and furnish all operating necessaries such as fuel and repairs; Defendant must also pay the driver's wages and all employments taxes and insurance; Defendant further agreed to indemnify and save harmless the shipper, Alfalfa Cooperative, from any losses or liabilities resulting from the operation of such equipment, and further agreed to pay all fines and penalties for violations of any federal, state and municipal laws and regulations of the Interstate Commerce Commission. Compensation under the purported leases was based upon weight rather than mileage and the applicable rate was determined by the Alfalfa Co-operative.

The purportedly leased equipment was operated by Defendant's drivers at all times and these drivers even signed the purported leases on behalf of Defendant as its authorized representatives.

There can be absolutely no question but that the equipment and drivers, purportedly leased to Alfalfa Co-operative, were in fact being operated and controlled by the Defendant. Even the motivation underlying the spurious leasing arrangements, on a trip by trip basis, was clearly indicated to be the desire by the Defendant to provide "return" revenue for its otherwise empty equipment subsequent to Defendant's transportation and delivery to the Guntersville, Alabama, area of commodities it had the authority to haul.

Despite defense contentions to the contrary, it is clear that the Defendant, particularly through its President and majority stockholder, J. Wesley Lowther, was fully aware that the commodity to be transported and in fact transported for the account of the Alfalfa Co-operative was indeed dehydrated alfalfa meal and, furthermore, that such commodity was such that its transportation in interstate commerce for compensation was subject to regulation by the Commission so as to require appropriate operating authority from the Commission in accordance with Sections 203(c), 206(a) and 209(a) of the Interstate Commerce Act (49 U.S. C.A. §§ 303(c), 306(a) and 309(a)).

The commodity in question, namely, dehydrated alfalfa meal, had, indeed, been classified by the Commission in Administrative Ruling No. 107, issued by the Commission's Bureau of Motor Carriers on March 19, 1958, and adopted by Congress on August 12, 1958, in Section 203(b) (6) of the Act (49 U.S.C.A. § 303 (b) (6)), as follows: "Feeds—alfalfa meal—Not exempt". Defendant's President admitted at the trial that he was in possession of a copy of Ruling No. 107 at the time the transportation, as charged, was performed by Defendant for the Alfalfa Co-operative.

Defendant recognized the non-exempt nature of the commodity transported, namely, dehydrated alfalfa meal, and thus attempted to evade the requirements of the Interstate Commerce Act by entering into the purported lease agreements with Alfalfa Co-operative as indicated above. Defendant claimed to have been told by an employee of one of the Alfalfa Co-operative's members that such leasing agreements as have been introduced in evidence herein were perfectly legal. Admissions were made by Defendant's President, during the trial, that "at first" he felt such leasing was illegal and that he was aware that Defendant, as an "authorized carrier" was explicitly prohibited from leasing motor vehicle equipment and drivers to private carriers or shippers, such as the Alfalfa Co-operative by the Commission's leasing regulations, namely, 49 Code of Federal Regulations 207.6(a).

One of the defenses in this case was that the Defendant had been advised by an employee of one of the Alfalfa Co-operative's member organizations that the Co-operative was in some way exempt so that the leasing arrangements as devised by the Alfalfa Co-operative was entirely legal and had been "cleared" with the Interstate Commerce Commission. However, there was no evidence at the trial to establish the Co-operative as an exempt co-operative association within the purview of Section 203(b) (5) of the Interstate Commerce Act (49 U.S.C.A. § 303(b) (5)). Defendant took absolutely no steps to confirm any exempt status of the Alfalfa Co-operative and any leasing arrangement it might legally conduct with it.

## Conclusions of Law

The Court has jurisdiction over the defendant as well as the offenses charged herein.

Defendant is an "authorized carrier" within the meaning of that term as used in the Commission's leasing regulations, namely, 49 Code of Federal Regulations 207.6(a), and as such is prohibited by Section 207.6(a) of said regulations from leasing equipment and drivers, as it has attempted to do with respect to Alfalfa Co-operative in this case. This prohibition allows for two exceptions solely with respect to subsections 203(b) (7) and (8) of the Interstate Commerce Act (49 U.S.C.A. § 303(b) (7) and (8)). Therefore, no other exceptions apply so that, even assuming an exempt status on the part of Alfalfa Co-operative under Section 203 (b) (5) of the Interstate Commerce Act (49 U.S.C.A. § 303(b) (5)) or even an exempt status on the part of the commodity transported, the attempted leasing of equipment and drivers in this case would continue to be legally prohibited by Section 207.6(a) of the Commission's leasing regulations.

The commodity transported herein, namely, dehydrated alfalfa meal is a non-exempt commodity subject to economic regulations by the Commission within the purview of Sections 203(c), 206(a) and 209(a) of the Act, (49 U.S.C.A. §§ 303 (c), 306(a), and 309(a)), the interstate transportation of which by the defendant required appropriate operating authority from the Commission. Defendant had no such operating authority.

▉ The Alfalfa Co-operative is not found to be an exempt co-operative association within the purview of Section 203(b) (5) of the Act (49 U.S.C.A. § 303 (b) (5)) and even if it were, any such exempt status would not redound to the benefit of the defendant for two reasons: (1) the defendant is specifically prohibited by Section 207.6(a) of the Commission's leasing regulations from leasing to any private carriers or shippers, such as the Alfalfa Co-operative; and (2) the purported leases in this case were totally illegal by their very provisions so that the motor vehicles involved were not "controlled and operated" by the Co-operative as required by Section 203(b) (5) of the Act. (I.C.C. v. Jamestown Farmers Union Federated Co-operative Transp. Assn., 8 Cir., 151 F.2d 403.

▉ The purported leases in this case explicitly imposed all of the characteristic burdens of the transportation business on

the purported lessor, namely the defendant, and the operations were in fact conducted under the control of the defendant. The purported leasing arrangements were therefore most clearly unlawful as established by the United States Supreme Court in United States v. Drum et al., 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed. 2d 360 and the decisions cited therein, and simply amounted to nothing more than specific contracts of transportation.

The transportation of dehydrated alfalfa meal in this case for the account of the Alfalfa Co-operative was indeed performed by the defendant, as a matter of law, for compensation in interstate commerce by motor vehicle without the necessary authority from the Interstate Commerce Commission.

The violations as found herein were "knowingly and wilfully" committed, within the meaning of phrase as used in Section 222(a) of the Interstate Commerce Act (49 U.S.C.A. § 322(a)).

The meaning and effect of the words "knowingly and wilfully" must depend upon the context in which they are used. In the context of the criminal statute involved in this case, namely 49 U.S.C.A. § 322(a), the phrase must be taken to create a *malum prohibitum* offense, and not an offense connoting the existence of any evil motive or moral turpitude, or specific criminal intent, such as, for instance, an attempt wilfully to evade the payment of income taxes and thus to cheat the government. See Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 87 L.Ed. 418; United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381; United States v. Illinois Central R. R. Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773.

It is equally well-settled that while wilfulness is a question of fact, direct proof thereof is not essential. It may be *inferred* from acts, conduct, and circumstances, and the inference may be drawn from a combination of acts and circumstances. Inland Freight Lines v. United States, 10 Cir., 191 F.2d 313; Spurr v. United States, 174 U.S. 728, 842, 19 S.Ct. 812, 43 L.Ed. 1150; United

States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381; St. Louis & S. F. R. Co. v. United States, 8 Cir., 169 F. 69; Potter v. United States, 155 U.S. 438, 15 S.Ct. 144, 39 L.Ed. 214.

In a number of criminal actions before the federal courts these principles have been applied in construing the phrase "knowingly and wilfully" with necessarily liberal interpretations resulting in criminal convictions under 49 U.S.C.A. § 322(a) in the face of factual situations much less clear-cut than that involved in the instant case.

In the case of United States v. Steffke, D.C., 36 F.Supp. 257, the carrier-defendant had entered into a lease of equipment agreement with a shipper. Defendant was found in violation of the Interstate Commerce Act as performing unauthorized operations for the shipper under the guise and subterfuge of the leasing agreement despite the provisions in the lease that the shipper was to maintain exclusive possession and control over the equipment and drivers; a thirty day term for the lease; and maintenance of the equipment to be performed by the shipper. The carrier-defendant in that case had even made an outward display of good faith by contacting the Commission and discussing the leasing arrangement with a Commission representative.

United States v. LaTuff Transfer Service, D.C., 95 F.Supp. 375, involved trip-leasing by the defendant-carrier. The Court there ruled, despite any leasing arrangements to the contrary, that defendant, the alleged lessor, was in fact a carrier performing transportation services without authority and therefore subject to conviction under 49 U.S.C.A. § 322(a). The Court there stated:

> "Motor carrier operations must be bona fide and conducted in good faith, without a shadow of subterfuge or attempted evasion of the letter or obligation of the law."

An example of the very high standards to which persons are held by the Courts in preserving the regulatory fibres of the Interstate Commerce Act is the case of

United States v. Gunn and Ozark Packing Company, D.C.Ark.1950, 97 F.Supp. 476. In this case Ozark was the shipper and was included in the criminal charges as aider and abettor under 18 U.S.C.A. § 2. Neither the carrier, Gunn, nor the shipper, had any operating authority whatsoever, from the Commission, authorizing interstate transportation operations. Therefore, lease of equipment agreements were entered into by these parties, each for a period or term of one trip's duration, as in the instant case. *In this case, the carrier-defendant, Gunn, told the shipper-defendant, Ozark, that the lease was perfectly legal and in fact had been used by an "authorized carrier" which was known by Gunn and Ozark to be the holder of operating authority from the Commission.* The Court nevertheless found the shipper, Ozark, equally as guilty as the carrier, Gunn, as an aider and abettor of violations by Gunn of sections 209(a) and 222(a) of the Interstate Commerce Act (49 U.S.C.A. §§ 309(a) and 322(a)).

The Court stated that the offenses charged were misdemeanors so that proof of specific criminal intent was not essential and that, since the offenses were *malum prohibitum* there was no implication in the words "knowingly and wilfully" of any evil purpose or criminal intent.

The Court further ruled as follows:

"The defendant, Ozark Packing Company, is *presumed to have a practical knowledge of the law commensurate with its duties,* the nondischarge of which may constitute an offense. A sane person who commits a wrong is bound to know that the wrong is subject to penal consequences. If the wrong is *malum prohibitum,* it should be known by the person for it is his duty to know what the law prohibits. *Otherwise, no statute of this nature could be enforced."* (Emphasis supplied.) 97 F.Supp. 476.

There was no doubt in the Court's mind that Ozark intended to do what it did in obtaining the unauthorized transportation services of Gunn under the guise of a lease. Ozark was charged by the Court with knowledge that Gunn held no operating authority from the Commission and that the leasing arrangement was simply a subterfuge, citing Wharton's Criminal Evidence, Vol. 1, Sections 87 and 88 (11th Ed.).

In the instant case we are not dealing with a shipper. We are dealing with a carrier-defendant which, along with its President and majority stockholder, has been in the motor carrier business for over thirty (30) years, even as an "authorized carrier".

■ Considering all the facts and circumstances as well as defendant's conduct, including particularly defendant's experience in the motor carrier field, its realization of the nature of the commodity as well as its non-exempt, regulated nature, as to which it had at least constructive knowledge by virtue of its possession of the Commission's Administrative Ruling No. 107; its awareness that the Commission's leasing regulations (49 C.F.R. 207.6(a)), prohibited it as an "authorized carrier" from leasing to private carriers or shippers, such as the Alfalfa Co-operative in this case; the obviously illegal and spurious nature of the leasing agreements in this case; and the absence of any action on the part of defendant to determine the legality of the arrangements herein, the conclusion is inescapable that the violations herein were committed knowingly and wilfully by the defendant.

The defendant, therefore, is guilty as charged in Counts 1 to 10, inclusive, and is hereby fined $100.00 on each of Counts 1 to 10 inclusive, for a total fine of $1,000.00 said fine to be paid in full. To stand committed within 30 days.

Judgment against the defendant in accordance with the above should be entered, with(out) costs.