**UNITED STATES of America,
Plaintiff,**

**v.**

**INDIANA TRUCKING, INC., a corporation, and J. B. Frostick, an individual, Defendants.**

**No. 68 CR 513.**

United States District Court
N. D. Illinois, E. D.

May 16, 1969.

Thomas A. Foran, U. S. Atty., Chicago, Ill., for plaintiff.

Bernard H. Sokol and Eugene L. Cohen, Chicago, Ill., for defendants.

## DECISION ON THE MERITS

ROBSON, District Judge.

The twelve-count information in this criminal prosecution charges that the defendants knowingly and willfully used false freight bills in order to evade or defeat regulation by the Interstate Commerce Commission ("I.C.C."). The defendant Indiana Trucking, Incorporated

("Indiana Trucking") is charged as a principal under 49 U.S.C. § 322(c),[1] and the defendant J. B. Frostick is charged as an aider and abettor under 18 U.S.C. § 2.[2] After a trial on the merits, this court finds the defendants guilty as charged in the information.

The undisputed facts indicate that during the month of March, 1967, Indiana Trucking, a contract carrier, made twelve shipments which originated in Chicago, and other points in Illinois. The destination for all of these shipments was Butler, Indiana. These shipments were therefore in interstate commerce. It is admitted by the defendants that Indiana Trucking did not have the requisite certification by the I.C.C. authorizing interstate shipment of the particular goods involved, and these shipments were therefore in violation of 49 U.S.C. § 303(c).[3]

It is undisputed that accompanying each of these twelve illegal shipments were three documents: a freight bill issued by Indiana Trucking, the preparation of which was supervised by the defendant J. B. Frostick; a bill of lading containing the terms of the carriage contract, which was prepared by the shipper, and a delivery receipt prepared by Indiana Trucking. These documents were kept in the office files of Indiana Trucking, the documents pertaining to each instance of transportation being fastened together with the freight bill on top. According to the uncontroverted testimony of the I.C.C. District Supervisor, James W. Habermehl, when an I.C.C. investigator stops a carrier for inspection, it is customary to request the driver to show him any freight bills in his possession pertaining to the transportation being performed.

The gravamen of this prosecution rests upon these freight bills. Three names and addresses appear at the top of each of the bills. Imprinted in boldface type in the center is:

INDIANA TRUCKING, INC.
425 West Chicago Avenue
East Chicago, Indiana.

On the upper right-hand side of each bill is the imprinted word "Consignee." Typed thereunder on each bill is the same name and address:

Hendrickson Tandem Corp.
Butler, Indiana.

The word "shipper" is imprinted on the upper left-hand side of each freight bill. On the bills named in Counts I through IV, the shipper is identified as "Kropp Forge Co., *East Chicago, Indiana*."[4] On the bills named in Counts V, VIII, IX and XI, the shipper is identified as "Wyman & Gordon Co., *East Chicago, Indiana*." On the bills named in Counts VI, VII, X and XII, the shipper is identified as "Burton Auto Springs Co., *East Chicago, Indiana*." It is undisputed that none of the named shippers have facilities of any kind at East Chicago, Indiana. All of the named shippers are located within Cook County, Illinois, the actual point of origin of each of the shipments in question. However, the freight bills accompanying these unlawful interstate shipments gave the appearance of an intrastate transaction, with both points of origin and desti-

---

1. 49 U.S.C. § 322(c) provides, in part, as follows: "Any person * * * by the use of any false or fictitious bill, bill of lading, receipt, voucher, roll, account, claim, certificate, affidavit, deposition, lease, or bill of sale * * * [who] shall knowingly and willfully by any such means or otherwise fraudulently seek to evade or defeat regulation as in this chapter provided for motor carriers or brokers, shall be deemed guilty of a misdemeanor * * *."

2. 18 U.S.C. § 2(a) provides as follows: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal."

3. 49 U.S.C. § 303(c) provides, in part, as follows: "* * * [N]o person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, * * * unless there is in force with respect to such person a certificate or a permit issued by the Commission authorizing such transportation * * *."

4. The emphasis on the addresses of the shippers is the court's.

nation within Indiana, which would be exempt from regulation by the I.C.C.

It is also undisputed that Ralph A. Bihlman, the owner and principal officer of the defendant Indiana Trucking, has been in the contract carriage business for over 32 years, and that the defendant J. B. Frostick has worked for him for approximately 30 years. Indiana Trucking had previously obtained certification from the I.C.C. to ship specified goods on behalf of the Morton Salt Company and the United States Gypsum Company from Chicago, Illinois, to various points in Indiana. This uncontroverted evidence shows that the defendants knew the requirements of the law pertaining to the illegal shipments involved in this case.

The defendants contend that the offenses alleged in the information require proof beyond a reasonable doubt that they specifically intended to commit a willful and knowing fraud by the use of the "incorrect" freight bills. The defendants further contend that such a reasonable doubt exists because (1) no attempt was ever made to conceal the services being performed by Indiana Trucking; (2) the bill of lading showing the actual point of origin moved with each shipment and was filed in the offices of Indiana Trucking in regular order available for inspection, and (3) the I.C.C. made a previous finding that the conduct complained of here was not a "subterfuge." Furthermore, contend the defendants, when the I.C.C. District Supervisor visited the Indiana Trucking premises, its employees were courteous and cooperative, no attempt was made to conceal or misrepresent, and all documents requested were promptly produced for inspection.

## THE ELEMENTS OF A 49 U.S.C. § 322(c) OFFENSE

 It is the Government's contention that violations of the Interstate Commerce Act ("the Act") are crimes *malum prohibitum* [5] rather than crimes *malum in se*,[6] and therefore proof of specific intent is not an essential element of a 49 U.S.C. § 322(c) offense. According to the weight of authority, "knowing and willful" violations of the Act and its regulations, prosecuted under the general penalty provision, 49 U.S.C. § 322(a), have been interpreted to fall within that class of offenses characterized as *malum prohibitum* and therefore do not require proof of specific intent. United States v. John Henricks, Inc., 388 F.2d 677 (7th Cir. 1968); United States v. Lowther Trucking Co., 229 F.Supp. 812 (N.D.Ala. 1964);[7] Steere Tank Lines, Inc. v. United States, 330 F.2d 719 (5th Cir. 1963).

The defendant does not contest that the shipments in question violated the provision requiring a certificate of authority for interstate shipments, i. e., 49 U.S.C. § 303(c). However, the Government chose to prosecute these defendants for an aggravated offense under 49 U.S.C. § 322(c), which adds the element of using any false or fictitious document or other fraudulent device to evade or defeat the Act or its regulations. The defendant contends that in order to show a violation of this aggravated provision, the Government must prove fraudulent intent within the context of the common law elements of criminal fraud. However, it

5. " * * * [A]n act which is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law." Black's Law Dictionary 1112 (4th ed. 1957).

6. " * * * [A]n act or case involving illegality from the very nature of the transaction, upon principles of natural, moral, and public law."

7. "[I]n * * * 49 U.S.C.A. § 322(a) [knowingly and wilfully] create a *malum prohibitum* offense, and not an offense connoting the existence of any evil motive or moral turpitude, or specific criminal intent, such as, for instance, an attempt wilfully to evade the payment of income taxes and thus to cheat the government. * * * "

"It is equally well-settled that while wilfulness is a question of fact, direct proof thereof is not essential. It may be *inferred* from acts, conduct, and circumstances, and the inference may be drawn from a combination of acts and circumstances." *Id.* 229 F.Supp. at 816.

is the opinion of this court that Congress, in imposing an aggravated fine [8] for use use of false documents in connection with infractions of I.C.C. rules and regulations, did not intend to create a statutory equivalent of common law fraud. Rather, as a *malum prohibitum* offense, proof is required to show that the defendants used false documents knowingly and willfully as part of a course of conduct which sought to evade or defeat an I.C.C. regulation. Proof of specific intent to defraud the I.C.C. is not prerequisite to a finding of guilt. A construction of the Act requiring proof of fraudulent intent, or other common law elements of the crime of fraud, "would result in limitations neither expressed in the statute nor justified in the light of the purpose" of the Act. See *United States v. Luxon*, 166 F.Supp. 25, 29 (E.D.Ky.1958), for a similar construction of a statute penalizing the making of a false statement, knowing it to be false, to the Commodity Credit Corporation, for the purpose of influencing action or obtaining money and therefore defeating the statutory purposes of 15 U.S. C. § 714. That provision was held not to evoke the common law elements of fraud. For these reasons, this court concludes that a specific intent to defraud the I.C.C. is not a required element of a 49 U.S.C. § 322(c) offense.

## THE DEFENDANTS COMMITTED THE OFFENSES CHARGED BEYOND A REASONABLE DOUBT

■ It is undisputed that the defendants engaged in interstate commerce as a contract carrier without proper certification and thereby evaded and defeated 49 U.S.C. § 303(c). The freight bills accompanying these illegal shipments were false and fictitious in such a way that I.C.C. personnel conducting a normal road check would assume that the shipments were intrastate, and therefore not violative of law. The unrefuted testimony of the I.C.C. District Superintendent, Mr. Habermehl, shows that the defendant Frostick knew that the shippers' addresses were falsely given as "East Chicago, Indiana" on the freight bills. In response to a question asked of the defendant Frostick by Mr. Habermehl during a compliance investigation conducted on February 21, 1967, a month *before* the illegal shipments complained of here, Mr. Frostick said, "You know they don't," when asked if any of the shippers actually had facilities in East Chicago, Indiana. At that time, Mr. Habermehl discovered in excess of 50 unauthorized interstate shipments. It is also uncontroverted that when Mr. Habermehl returned to Indiana Trucking on April 13 and 14, 1967, he pointed out to the defendant Frostick that the origin point on the freight bills was incorrect and further, that Indiana Trucking held no authority to ship from Chicago, Illinois, to points in Indiana outside the Chicago Commercial Zone.[9] According to Mr. Habermehl's testimony, Mr. Frostick responded that he "knew they were going to get caught when I came in the door, and they were glad it was over." Upon the record, this court finds that the defendants, experienced in the contract carrier business for many years and familiar with I.C.C. regulations, well knew in fact that the shipments originating in Cook County, Illinois, were illegal, but gave these shipments an intrastate appearance by the knowing and willful employment of a freight bill containing false and fictitious information regarding the point of origin.

In the defendants' motion for a judgment of acquittal at the close of the Gov-

8. The general penalty provision, 49 U.S.C. § 322(a) provides a fine of not less than $100 nor more than $500 for the first offense, and not less than $200 nor more than $500 for any subsequent offense. The aggravated penalty provision under consideration here, 49 U.S.C. § 322(c), provides a fine of not less than $200 nor more than $500 for the first offense, and not less than $250 nor more than $2,000 for any subsequent offense.

9. The Chicago Commercial Zone is defined by the I.C.C. to include Chicago, various localities in and around Chicago, and four communities in Indiana, namely Hammond, East Chicago, Whiting and Gary.

ernment's case, which this court took under advisement, it was contended that because the freight bills were not a required document for a contract carrier under the I.C.C. regulations, there was no evasion of the regulations by reason of the false bills. However, § 322(c) clearly proscribes *any* false or fictitious documents or fraudulent devices used to evade or defeat *any* I.C.C. regulation, e. g., the requirement that authorization be obtained for interstate shipments provided by 49 U.S.C. § 303(c). Had the freight bills been required documents, an even more aggravated offense would have been committed under 49 U.S.C. § 322(g).[10]

The defendants further contend that the fact they kept the bills of lading, a printed form issued by the shipper which contained the correct information regarding points of origin, and voluntarily turned these documents over to the I.C.C. investigator negates any deceit or fraud on their part. However, as discussed above, it is not necessary that the Government prove the elements of common law criminal fraud. The accessibility of true and correct information, prepared by a third person, is immaterial to the question of whether the defendants prepared and used false documents to defeat I.C.C. regulation. Furthermore, the testimony indicates that it is the freight bill, not the bill of lading, that would customarily be checked during an in transit I.C.C. investigation. The defendants' later cooperation with the I.C.C. investigators has little, if any, probative value upon the issue of whether they knowing-

ly and willfully used false freight bills in the course of their illegal interstate transportation activities.

## PREVIOUS I.C.C. PROCEEDINGS ARE NOT BINDING UPON THIS COURT

The I.C.C. Bureau of Accounting conducted audits of the books and records of Indiana Trucking in 1957 and 1964. The defendants claim that the failure of these investigations to uncover any irregularities of the nature alleged in this prosecution has a bearing on their lack of culpability in preparing "incorrect" freight bills. Mr. Bihlman testified that Indiana Trucking's records have been kept in "exactly the same way" for 38 years, and that the practice of using Indiana Trucking's own East Chicago, Indiana, location as the point of origin on freight bills has always been followed.[11] No evidence was produced to show that during the periods covered by the two audits, Indiana Trucking was transporting interstate shipments in substantially the same manner for the same shippers involved in this case, nor that the practice of using East Chicago, Indiana, as the point of origin on freight bills was followed during the relevant periods. In rebuttal, the Government offered the testimony of an I.C.C. Accounting Examiner who testified that examinations of books and records, such as that conducted by the I.C.C. in 1957 and 1964, are concerned with *accounting* irregularities and not *operational* irregularities. A reading of the I.C.C. reports relative to these audits [12] corroborates this testimony. This

---

10. Under 49 U.S.C. § 322(g), the penalty for falsifying required documents is not more than $5,000 for each offense.

11. Mr. Bihlman's testimony regarding the allegedly long-established bookkeeping practices of Indiana Trucking was not corroborated by any documentary evidence. The defendants did not produce freight bills relating to their *authorized* interstate transportation activities on behalf of United States Gypsum Company or Morton Salt Company to show that in their *legal* operations they also followed the practice of using East Chicago, Indiana, as the point of origin on freight

bills. This court finds such an alleged bookkeeping procedure incredible in view of the fact that Indiana Trucking's name, address, and telephone number already appear imprinted in boldface type on the letterhead of every freight bill. Furthermore, Mr. Bihlman's own testimony indicates an unfamiliarity with Indiana Trucking's procedures in preparing and using freight bills. He was uncertain of the number of copies prepared, the purpose for which they were prepared, and the recipients of the copies.

12. Defendants' Exhibits 4 and 6.

court therefore concludes that there has been no factual showing that the I.C.C. was on notice of Indiana Trucking's "established procedure" of identifying East Chicago, Indiana, as the point of origin on freight bills regardless where freight was actually picked up. Furthermore, even if employees of the I.C.C. had such knowledge and the defendants were misled by nonaction on the part of the I.C.C., neither principles of estoppel nor any other equitable consideration entitle the defendants to immunity from statutory and regulatory proscriptions. United States v. Coleman Capital Corporation, 295 F.Supp. 1016, 1019 (N.D.Ill.1969); ANA Small Business Investments, Inc. v. Small Business Administration, 391 F.2d 739, 743 (9th Cir. 1968); Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

Finally, the defendants contend that a prior I.C.C. proceeding which considered the conduct complained of in this prosecution is binding upon this court. Specifically, the defendants cite the following statement contained in the I.C.C. Report and Order recommended by Joint Board No. 21:

> "* * * The joint board is unable to conclude, as requested by applicant, that the Hendrickson transportation was conducted by applicant in good faith and under color of right. On the other hand, despite the issuance by applicants of freight bills showing the origin of these shipments as East Chicago, in accordance with what applicant describes as reasonable billing practices, no real attempt was made to conceal the services being performed by applicant. The shipping order showing actual origins moved with the shipment and was filed with the freight bill in regular order, available for inspection. The absence of subterfuge, however, although commendable, does not alter the fact that applicant, for an extended period of time, performed a substantial transportation

service, unlawfully, in contravention of the act." [13]

The defendants argue that the foregoing statement, part of an Order later affirmed by the I.C.C. itself, (1) raises such a reasonable doubt of the existence of fraudulent intent as to require a finding of not guilty, and (2) that the I.C.C., as a "prime mover" in seeking this prosecution, should be barred and estopped from charging the defendants with fraud in view of its own finding that there was a "lack of subterfuge" in the conduct complained of.

The first argument regarding lack of intent to defraud is without merit in view of this court's conclusion that the common law requisites of a criminal fraud action, such as proof of specific intent to deceive or showing of a scheme which could be characterized as a "subterfuge," are not required elements of an offense under 49 U.S.C. § 322(c).

Concerning the second argument, *res judicata* is not an available defense in this case. The prior I.C.C. proceeding was upon an application by Indiana Trucking for an extension of authority to cover the unauthorized transportation involved in this prosecution. However, it was not an adverse hearing with respect to the issues before this court. There, the applicant had the burden of proving public need, or the need for contract carriage, and that it is fit, willing and able to perform the transportation for which authorization is sought. 49 U.S.C. §§ 307 and 309. Indiana Trucking failed to meet that burden, and its application was consequently denied. Indiana Trucking's prior unauthorized operations were held to be in bad faith and to reflect adversely upon its fitness. However, the Bureau of Enforcement did not direct itself to the question of whether the applicant knowingly and willfully used false documents in order to defeat or evade I.C.C. regulation, the issue before this court.

13. Defendants' Group Exhibit 9 entitled "No. MC 93235 (Sub. No. 6), Indiana Trucking, Inc., Extension—Truck Parts to and from Butler, Indiana," at page 8.

ORDERS

It is therefore ordered that the defendants' motion for a judgment of acquittal be, and it is hereby denied. It is further ordered that judgment upon a finding a guilty as charged in the information be, and it is hereby entered.