**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**PARAMOUNT MOVING AND STORAGE COMPANY, INC., Defendant-Appellant.**

Nos. 74–141–Cr–J–T, 74–148–Cr–J–T.

United States District Court,
M. D. Florida,
Jacksonville Division.

Oct. 11, 1979.

Robert S. Yerkes, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Dan R. Schwartz, Jacksonville, Fla., Herbert Burstein, New York City, for defendant-appellant.

OPINION

CHARLES R. SCOTT, District Judge.

This is an appeal from two consolidated criminal cases tried by consent before the Honorable Joseph W. Hatchett, United States Magistrate, in January of 1975. The two cases charged defendant-appellant, Paramount Moving and Storage Company, Inc. (hereinafter "defendant"), with willfully violating certain regulations promulgated by the Interstate Commerce Commission (hereinafter "ICC"). Defendant was acquitted of several of the counts of the two informations, but was convicted of three of the counts. Defendant has appealed, arguing that the evidence adduced at trial was insufficient to support the convictions.

Procedures before, and appeals from orders entered by, the United States Magistrate are governed by 18 U.S.C. § 3402. 28 U.S.C. § 636(c). Appeals from convictions in the Magistrate's court are reviewed by the district court upon the same scope and by the same standard as appeals from district court judgments are reviewed by a court of appeals. That standard calls for the court to view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. The court must determine as a matter of law whether there is substantial evidence, direct or circumstantial, to support the judgment. *Glasser v. United*

*States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States of America v. Bruce*, 488 F.2d 1224, 1225 (5th Cir. 1973). Substantial evidence has been defined to be "evidence that affords a substantial basis of fact from which the fact in issue can be reasonably inferred." *School Board of Broward County, Florida v. HEW*, 525 F.2d 900, 904 (5th Cir. 1976). Because the Court determines that there is substantial evidence to support the convictions, the judgments of the Magistrate will be affirmed.

Defendant is a common carrier operating under a Certificate of Public Convenience and Necessity issued by the ICC. 49 U.S.C. § 1 *et seq.* These criminal cases arise out of defendant's conduct in transporting household goods for individuals moving to Florida. Because the factual allegations of the two informations are unrelated, the Court will deal with the cases separately.

The circumstances giving rise to the charges contained in Case No. 74–141–Cr–J–T came about as a result of defendant's transportation of household goods from Wantaugh, New York, to St. Augustine, Florida, for one Mr. William J. Sutton. The evidence produced at trial indicates that in January 1974, Mr. Sutton contacted a representative of defendant with regard to Mr. Sutton's planned move to Florida. After an estimate of cost was prepared and accepted, it was agreed that defendant would pick up Mr. Sutton's household goods on February 27, 1974 and deliver them to St. Augustine, Florida, sometime between March 4 and March 8, 1974.

When defendant arrived to make the pick-up on February 27th, no Order for Service was presented to Mr. Sutton or his wife. This is not disputed. By explanation, defendant asserts that the Order for Service had been mailed to the Suttons sometime prior to the 27th and that the Suttons either lost the document or simply failed to return it. Defendant offered evidence showing that it is the customary practice of the company to send the Order for Service sometime prior to the pick-up date with the instructions that the shipper return the signed document to the company. There is, however, no documentary evidence, such as carbon copy, showing that the Order for Service was actually sent or even prepared, in this particular case, at or before the time of the pick-up.

A document entitled "Revised Order for Service" was given to the Suttons upon the delivery of their household goods on March 12, 1974 by the driver of the moving van. Defendant contends that the Revised Order for Service was prepared for the purpose of reflecting a correction made in the original Order for Service. Defendant asserts that this Revised Order for Service indicates that an original must have been prepared.

The moving van trailer carrying the Sutton's household goods, which ultimately arrived in St. Augustine on March 12th, identified defendant as the carrier. The tractor pulling the trailer, however, did not have defendant's name printed on it. Defendant introduced evidence at trial tending to show that magnetic signs on which defendant's name, address, and ICC number is imprinted are distributed to those drivers whose tractors are not permanently designated as belonging to defendant. The tractor that delivered the Suttons' goods was driven by an agent who had previously driven for another carrier. Defendant asserts that this is why the tractor did not have defendant's name permanently painted on it. Defendant produced evidence showing that the driver was issued two magnetic signs to be attached to the sides of the tractor before it left New York. It was also shown that at the time the tractor left defendant's premises in New York, the magnetic signs were properly attached to the tractor. However, no evidence was introduced to explain how or why the signs were removed before the tractor arrived in St. Augustine.

Case No. 74–148–Cr–J–T deals with another occasion in which defendant undertook to transport household goods; this time to Gainesville, Florida, for one Mr. Paul M. Cohen. By the Order for Service, which in this case was properly prepared and presented, the goods were to be picked up on December 5, 1973, in New York, New York, and delivered to Gainesville, Florida,

between December 7 and December 12, 1973. Mr. Cohen testified that when his furniture had not arrived by December 12, 1973, at his own expense, he telephoned defendant from Florida and was told that the driver had incurred some mechanical trouble with his truck but that delivery would be made by December 14. Having received no communication from defendant on either the 13th or the early part of the 14th, Mr. Cohen again called defendant in New York. Defendant's response was an assurance that delivery would be made on the 15th.

By Noon of the 15th, Mr. Cohen called defendant again, but to no avail. Mr. Cohen also placed calls on the 18th, the 19th, and the 20th, none of which resulted in the shipment being delivered. On the afternoon of the 20th, Mr. Cohen received a call from defendant informing him of the location of the truck and setting delivery for the 21st. Then on the evening of the 23rd, Mr. Cohen received a call from the driver of the truck who indicated that the goods could be delivered that night. Mr. Cohen's household belongings were finally delivered on the 24th of December.

Defendant contends that a telegram was sent to Mr. Cohen sometime before the 13th of December explaining that the driver had run into several problems on his way from New York to Florida. Defendant asserts that Mr. Cohen's failure to receive the telegram does not foreclose the possibility that it was indeed sent, since there is the chance the telegraph company erred in transmitting the communication. Defendant, however, did not produce any invoice for, or copy of, the telegram in support of its contention. In defense of its delay in delivery, defendant urges that the truckers' strike, which was in progress during the anticipated period of delivery, was responsible for intimidating the driver and causing general delay and confusion in the trucking industry. There was no evidence introduced to explain why none of Mr. Cohen's early telephone calls were not returned despite his regular inquiries.

Based upon these facts, the Magistrate found that the defendant was guilty of knowingly and wilfully failing and refusing to abide by certain regulations promulgated by the ICC in violation of 49 U.S.C. § 322(a). The regulation dealing with the Order for Service, 49 C.F.R. 1056.9(a) states that

Every motor carrier shall prior to receipt of the shipment of household goods, prepare an order for service which contains the following minimum information:

(1) Shipper's name, address, and telephone number.

(2) Consignee's name, address, and telephone number.

(3) Name, address, and telephone number of the carrier's delivering agent or, if the shipment is to be interlined, the name, address, and telephone number of the delivering carrier.

(4) Agreed pickup date and agreed delivery date, or in lieu of specific dates, the agreed period or periods of time within which pickup, delivery, or the entire move, will be accomplished.

(5) The location of the certified scale to be used in weighing the shipment at origin.

(6) Shipper's contacts, en route, if any, and at destination.

(7) Complete description of special services ordered.

(8) Any identification or registration number assigned the shipment by the carrier.

(9) Amount of estimated charges and method of payment of total tariff charges.

(10) Maximum amount required to be paid in cash, certified check, or money order to relinquish possession of a c. o. d. shipment.

(11) Whether shipper requests notification of charges as provided in § 1056.-8(d) and the address at which such communication will be received.

Subsection (b) provides that

The order for service shall be signed by the shipper or his representative who is ordering the service; the requirement of

the shipper's signature shall apply to all orders for service except where there is both an agreement for the extension of credit by the carrier and a written waiver of such requirement by the shipper or his representative.

49 C.F.R. § 1056.12(c) places a duty on the carrier to notify the shipper when the delivery of a shipment will be delayed. It states

Whenever a carrier is unable to make a delivery of a shipment of household goods on the date or during the period specified in the receipt or bill of lading, the carrier shall notify the shipper, or person designated by the shipper, by telephone, telegraph, or any person, at the carrier's expense, of the location and general condition of the shipment, the reason for such delay, and the date or period of time during which the delivery of the shipment will be made and shall repeat such notification if any subsequent date or period of time so assigned is not met.

Subsection (e) of Section 1056.12 provides that

When notification required by paragraph (b) or (c) of this section is given, a record shall be prepared setting forth the time and date of notification, method of notification, the name of the person notified, the reason for delay, the location and condition of the shipment in cases of delay in delivery, the new date or period assigned for pickup or delivery, and the signature of the person who gave such notification which record the carrier shall preserve as a part of its record of the shipment.

All vehicles used by carriers in for-hire operations are required to be identified. 49 C.F.R. § 1058.2 states:

There shall be displayed on both sides of each vehicle operated under its own power, either alone or in combination, . . . the name, or trade name, of the motor carrier under whose authority the vehicle or vehicles is or are being operated, and the certificate, permit, or docket number assigned to such operating authority by the Interstate Commerce Commission. . . . If the name of any person other than the operating carrier appears on the vehicle operated under its own power, either alone or in combination, the name of the operating carrier shall be followed by the information required above and be preceded by the words "operated by".

The first question to be addressed is whether, in fact, these regulations were violated. If it is found that they were violated, the question becomes whether the violations were knowing and wilful.

With respect to the requirement that the carrier notify the shipper when the delivery is delayed, the evidence shows unmistakenly that the carrier failed to properly notify Mr. Cohen on several occasions that the delivery date could not be met. Originally, delivery of Mr. Cohen's household goods was to be made in Gainesville, Florida, sometime between the 7th and the 12th of December. When Mr. Cohen had received no word from defendant by the 13th of December, he placed a telephone call to New York at his own expense. On several occasions thereafter, defendant failed to telephone Mr. Cohen in Gainesville as defendant had promised, thus necessitating repeated calls by Mr. Cohen. That defendant accepted these collect calls does not vitiate the failure on defendant's part to provide Mr. Cohen with the timely information required by the regulations.

There is ample evidence to support the Magistrate's conclusion that a telegram was not sent by defendant. The Western Union office in Gainesville, Florida, had no record of any such telegram being received. Defendant produced no record of the transmittal of the telegram, even though Mr. Cohen was told that a copy was available. Nor can the existence of a nationwide truckers' strike at the time of the shipment be used as a legal excuse for the failure to notify Mr. Cohen; especially because such conditions would forewarn a carrier that shipment delays were a very real possibility.

Thus, the Court must conclude that there is substantial evidence to support a finding that defendant failed to comply with the regulation requiring the carrier to notify the shipper of a delay in delivery.

In regard to the alleged failure of defendant to properly display its trade name, there is no question that the tractor was not properly identified when it arrived at its destination in St. Augustine, Florida. The photographs taken of the tractor when it arrived in St. Augustine show clearly the lack of the proper identification. Whether and when the magnetic signs that were attached when the tractor left New York were removed is not clear from the evidence. However, this evidence is not material to the determination concerning the failure to display the proper identification when it is so clear that, at some point, the magnetic signs were removed leaving the tractor improperly identified. Accordingly, the Court concludes that there is substantial evidence to support the Magistrate's determination that defendant failed to display its tradename.

The evidence presented concerning defendant's alleged failure to properly prepare an Order for Service is not quite as conclusive. Although defendant presented unrefuted evidence establishing that its customary practice was to mail the Order for Service to the shipper prior to the pickup date, defendant acknowledged that some time the shipper failed to return the order to defendant. Defendant's evidence shows that in most of these incidents, the Order for Service would be received shortly after the shipment was picked up and that in those cases where the order was not returned, a revised order would be issued. The Order for Service was mailed and returned in the Cohen case. In this case, Mr. Sutton once stated that no documents were given to him when his shipment was picked up but later, on cross-examination, responded affirmatively to the question:

> Now do you recall, sir, whether at the time the driver arrived at the premises New York City, he had a document called "ORDER FOR SERVICE"?

Additionally, the evidence shows that, of the several documents that Mr. Sutton denied having seen, many were indeed delivered to, and signed by, Mr. Sutton's wife before the shipment was picked up. However, neither the original nor a copy of the Order for Service that defendant claims it mailed to the Suttons prior to the pickup time on February 27, 1974 was introduced. On the basis of this conflicting evidence, it is difficult to determine whether in fact an Order for Service was delivered prior to time of pickup. But, the undisputed fact remains that the moving van driver did not have the Order for Service allegedly prepared before the pickup with him when the shipment was delivered in St. Augustine. The Court finds that despite the defendant's showing with respect to its customary practices, the inference may be drawn that, in this particular case, the Order for Service was not prepared and delivered to the shipper before the pickup.

The charge against defendant, however, encompasses more than the mere failure to prepare an Order for Service. The charge also includes the allegation that defendant failed to prepare an Order for Service in the form and manner required by the ICC. From the testimony of the district supervisor for the ICC, Mr. G. H. Fauss, Jr., discrepancies were noted in the Revised Order for Service which was prepared by defendant subsequent to the pickup date. Mr. Fauss suggested that the naming of Gray Moving and Storage as defendant's delivering agent was improper because that company had not assented to being so designated. Mr. Fauss also found deficient defendant's description of the location where the shipment was to be weighed; there being no street address included. Error was also found in the amounts listed on the revised order for service representing the total estimated charges and the maximum amount required to be paid by the Suttons upon delivery of the shipment. Finally, Mr. Fauss testified that the failure to indicate whether the shipper requested notification of actual weight and charges on a shipment was error.

Defendant does not deny that these discrepancies in the Revised Order for Service existed but rather attempts to explain why the inconsistencies resulted. For whatever moral justification these excuses may pro-

vide, they are insufficient, from a legal standpoint, to support a defense. There is substantial evidence to support the Magistrate's conclusion that an Order for Service was not properly prepared (including the signature of the shipper) prior to the pickup date. The evidence also shows that there were technical errors in the manner in which the revised order for service was prepared. Assuming, without deciding, that under some circumstances, execution of a Revised Order for Service may be appropriate, the carrier must still be held to the same standard of preparation as it is in the preparation of the original Order for Service. Thus, there is substantial evidence indicating that the Revised Order for Service failed to provide the information required by the regulations.

Having thus determined that there is substantial evidence supporting a finding that defendant did violate certain regulations of the ICC, the issue becomes whether the evidence supports the Magistrate's conclusion that the violations were knowing and wilful. This determination is required by 49 U.S.C. § 322(a) which provides that:

Any person knowingly and wilfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder, . . . shall, upon conviction thereof, be fined not less than $100 nor more than $500 for the first offense.

The terms "knowingly" and "wilfully" were interpreted by the United States Supreme Court in the landmark case of *United States v. Illinois Central R.R. Co.*, 303 U.S. 239, 242–43, 58 S.Ct. 533, 535, 82 L.Ed. 773, 777 (1938). There the Court gave the following guidance:

Mere omission with knowledge of the facts is not enough. The penalty may not be recovered unless the carrier is also shown "willfully" to have failed. In statutes denouncing offenses involving turpitude, "willfully" is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication.

Our opinion in *United States v. Murdock*, 290 U.S. 389, 394, [54 S.Ct. 223, 225, 78 L.Ed. 381,] shows that it often denotes that which is "intentional, or knowing, or voluntary, as distinguished from accidental," and that it is employed to characterize "conduct marked by careless disregard whether or not one has the right so to act." The significance of the word "wilfully" as used in § 3, [45 U.S.C.A. § 73,] now before us, was carefully considered by the circuit court of appeals for the eighth circuit in *St. Louis & S.F.R. Co. v. United States*, 169 F. 69. Speaking through Circuit Judge Van Devanter, now Mr. Justice Van Devanter, the court said (p. 71): " 'Wilfully' means something not expressed by 'knowingly,' else both would not be used conjunctively. . . But it does not mean with intent to injure the cattle or to inflict loss upon their owner because such intent on the part of a carrier is hardly within the pale of actual experience or reasonable supposition . . . . So, giving effect to these considerations, we are persuaded that it means purposely or obstinately and is designed to describe the attitude of a carrier, who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements." That statement has been found a useful guide to the meaning of the word "wilfully" and to its right application in suits for penalties under § 3. [citations omitted].

Further explanation of the term "knowingly" is found in *United States v. Times-D.C., Inc.*, 381 F.Supp. 730, 739–40 (W.D.Va.1974) where the court held that having the "means to know" satisfied the statute's requirement of knowledge. Additionally, proof that a violation was knowing and willful is not dependent on direct evidence, but may be inferred from the acts, conduct, and circumstances surrounding the violation. *United States v. Indiana Trucking, Inc.*, 300 F.Supp. 765, 767 n. 7 (N.D.Ill.1969).

It must be concluded that defendant knew or had the means to know that its conduct constituted violations of the regulation. Defendant has been in the business of

a motor carrier for hire, moving household goods for over thirty years. It has on its staff a former district supervisor of the ICC. Defendant is well aware of the regulations to which it is subject. Indeed, defendant is in as good a position as anyone to know the requirements of the regulations as well as their underlying purposes. Moreover, defendant has not seriously disputed the knowledge element of the offense, but rather has sought absolution by way of excuse and explanation for non-compliance. Based on the actions and conduct of defendant, as well as the information available to it, the Court concludes that the evidence is sufficient to support the Magistrate's conclusion that defendant knowingly committed the violations.

The Court also finds that there is substantial evidence to support the conclusion that defendant acted willfully. The Supreme Court's discussion in *United States v. Illinois Central Railroad Co., supra*, suggests that the term "willfully" connotes something less than specific intent but something more than mere negligence. In *United States v. Lowther Trucking Co.*, 229 F.Supp. 812, 817 (N.D.Ala.1964), the Court found that the defendant had willfully violated the prohibition against certain leasing arrangements because the defendant had intended to do what it did in obtaining the unauthorized transportation services of another under the guise of a lease. In other words, the actions of defendant had not been unknowing or inadvertent, but rather had been voluntary and with knowledge of the consequences. In the present case, defendant's failure to properly prepare an Order for Service cannot be characterized as involuntary or inadvertent. There was a conscious decision, on the part of defendant, not to prepare an Order for Service at the pickup site when it was evident that none existed. Defendant *did so intentionally; not accidentally*. The same may be said of the manner in which defendant prepared the Revised Order for Service. Having a choice in preparing the Order for Service, defendant intentionally prepared it in a manner that resulted in disregard of the requirements of the regulation.

Likewise, defendant did not accidentally or involuntarily fail to notify Mr. Cohen of the delay in his shipment. In fact, the evidence more properly shows that defendant deliberately chose not to keep Mr. Cohen informed of the location and condition of his household goods. Defendant's New York office was notified by Mr. Cohen of the delay, yet defendant never took the initiative to provide Mr. Cohen with information concerning his shipment.

Finally, defendant's actions with regard to the magnetic placards may be deemed willful. That the placards were properly attached to the truck when it left New York is undisputed. Whether the placards were removed purposely or by accident before the truck reached St. Augustine is not a question bearing on the issue of willfulness. As the court in *United States v. Illinois Central Railroad Co.* pointed out:

> It is immaterial whether the yardmaster's negligence or oversight [in not unloading the animals] was intentional or excusable. As between the government and respondent, the latter's breach is precisely the same in kind and degree as it would have been if its yardmaster's failure had been intentional instead of merely negligent. . . . To hold carriers not liable for penalties where the violations . . . are due to mere indifference, inadvertence, or negligence of employees would defeat the purpose of section 3.

*United States v. Illinois Central Railroad Co.*, 303 U.S. at 244, 58 S.Ct. at 535. The willfulness of defendant's action is found in its failure to continuously make certain that the placards were in place. *See United States v. John Henricks, Inc.*, 388 F.2d 677, 679 (7th Cir. 1968).

Defendant's contention that no willfulness could be shown because there were no prior warnings, civil orders, or criminal convictions for violations of these regulations cannot be accepted. To do so would place an impermissible obstacle in the path of enforcing the ICC's regulations. Evidence of previous convictions or violations is obviously very probative of willful disobedience,

but the lack of such evidence does not foreclose convictions under the statute. Indeed, the Supreme Court upheld the conviction in *United States v. Illinois Central Railroad Co.* even though there was no evidence of prior violations or evidence that the violations were of a continuing nature.

The Court thus finds that there is substantial evidence supporting the Magistrate's conclusion that defendant's guilt was established beyond a reasonable doubt. Accordingly, the judgments of conviction are affirmed.